611 So.2d 898 (1992)
Linda COLLINS
v.
Dr. C.V. JOSHI and Neshoba County General Hospital.
No. 07-CA-59599.
Supreme Court of Mississippi.
December 17, 1992.
*899 Laurel G. Weir, Thomas L. Booker, Jr., Weir & Booker, Philadelphia, MS, for appellant.
Mark P. Caraway, George Q. Evans, Wise Carter Child & Caraway, Jackson, MS, for appellees.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
This medical malpractice action was filed by Linda Collins, a resident of Neshoba County, Mississippi, against Dr. C.V. Joshi and Neshoba County General Hospital claiming that both of the named defendants breached their duty to administer the minimum standard of medical care in the treatment of Collins on November 19, 1987, when she was discharged from the named hospital and given a tranquilizer shot which was detrimental to both Collins and the baby she was carrying. Collins appeals from a directed verdict granted by the lower court. Finding that Honorable Edward Williamson of the Neshoba County Circuit Court should have recused himself from this case, we reverse and remand this cause for further proceedings.

I.
On November 16, 1987, Linda Collins, a twenty-three-year-old female residing in Philadelphia, Mississippi, was admitted to Neshoba County General Hospital (Neshoba General) by its employee, Dr. Chandrashekhar V. Joshi, complaining of marked coughing, a high degree of fever, bronchovesicular breathing, and pain in her chest. Dr. Joshi diagnosed Collins as suffering from acute bronchitis. It was also discovered that Collins was 10-12 weeks pregnant. While in the hospital, Collins started having morning sickness. To treat the nausea, Dr. Joshi prescribed Amitrol and Compazine. She was given Compazine while in the hospital and given a prescription to take home when she was discharged. She was instructed to use the Compazine sparingly and only if the Amitrol didn't work. She was also given an antibiotic to treat the bronchitis. Collins was discharged on November 19.
Later in the day on November 19, Collins was rehospitalized at Neshoba General complaining of a "tingling" at the corner of her mouth, some slurred speech, a drawing of her face, and numbness of her tongue. Dr. Joshi administered Valium, Vistaril and Xanax. Collins responded well. Dr. Joshi's medical history indicates that Dr. Joshi believed Collins' symptoms of November 19 were more or less related to anxiety and nicotine withdrawal.
Prior to Collins' treatment by Dr. Joshi at Neshoba General, she had been hospitalized in July, 1987, by Dr. Augustus Soriano, her family doctor, for an ovarian cyst and endometriosis. Dr. Soriano admitted Collins to Winston County Hospital for a D & C. Collins was not pregnant at that time.
Following her treatment at Neshoba General and for the remainder of her pregnancy, Collins was treated by Dr. Soriano. Dr. Soriano admitted Collins to the Winston County Hospital on February 3, 1988, for treatment of an acute urinary tract infection. She was discharged on February 8. She was admitted again on March 14 to the Winston County Hospital due to some small leaking of amniotic fluid, high blood sugar, and abdominal cramping. Collins was diagnosed as having a threatened abortion. She was discharged on March 18, 1988. On March 30, Collins was admitted to Winston County Hospital again by Dr. Soriano due to another acute urinary tract infection. She was discharged on April 2. On April 23, Dr. Soriano admitted Collins to the hospital again for an acute urinary tract infection. She stayed in Winston County Hospital for four days. Collins entered the hospital again on May 22 in the early stages of labor. Collins returned *900 home on May 23. On May 26, 1988, Collins gave birth to a healthy baby girl at the Winston County Hospital.
After filing a medical malpractice lawsuit against Dr. Joshi and Neshoba General, Collins moved for the assigned judge to recuse himself based on his relationship with the hospital. At a hearing held on June 23, 1988, Judge Williamson considered the recusal motion. He consolidated consideration on the motion with other pending recusal motions in other pending malpractice cases. Collins based her motion on Judge Williamson's legal representation from about 1981 until December, 1985, of the Neshoba General trustees. Dr. Joshi had been hired by Neshoba General during the time of Judge Williamson's representation. Collins also reminded the court that Judge Williamson had sued Dr. Augustus Soriano, her expert witness, on behalf of Neshoba General on one occasion and had won the suit. Judge Williamson explained that he had sat in on the interviews of Dr. Joshi but that he did not draft the contract for employment of Dr. Joshi. Judge Williamson also explained that his recusal in a prior similar case had caused a great inconvenience. Judge Williamson then overruled the recusal motion.
The trial in this matter began on July 20, 1988. Collins' witnesses consisted of herself and Dr. Soriano. Dr. Soriano, who was never tendered as an expert witness, testified that the prescribing of Compazine, Xanax, and Vistaril by Dr. Joshi were negligent acts because all three drugs are contraindicated in the first trimester of pregnancy because they can result in possible damage to the fetus. Dr. Soriano admitted that he has not found any damage to Collins' child and said he was aware of several studies showing that Compazine does not appear to cause any teratogenesis, development of malformed or monstrous babies.
Dr. Soriano acknowledged the subspecialty of maternal-fetal medicine within obstetrics and that maternal-fetal experts recognize the first 71 days of a pregnancy as the critical period. Dr. Soriano admitted that Collins was 85 days into her pregnancy when she was first treated by Dr. Joshi. He also admitted that the Physicians Desk Reference on drugs indicated that almost every drug in its listing had to be used with caution during a pregnancy. He conceded that he treated Collins on November 5, 1987, for a cold when Collins was within the critical 71-day period. Dr. Soriano gave Collins Keflex and Dilor-G as well as Tylenol No. 3 with codeine. He admitted that administration of codeine is contraindicated during pregnancy. He also gave her an antibiotic, Lincocin. He conceded that Lincocin is condemned in the PDR for use during the 71-day period of a pregnancy and is condemned for use with an upper respiratory infection such as the one Collins had.
Dr. James Nello Martin, Jr., an associate professor of obstetrics at the University of Mississippi Medical Center and board-certified physician in maternal-fetal medicine, testified for the defense as an expert. He reviewed the records of Collins' treatment at Neshoba General and found no fault with her treatment. He also said that Collins was beyond the critical 71-day period when she was seen by Dr. Joshi. According to Dr. Martin, a baby born normal virtually excludes any structural problem caused by drugs.
When Collins rested her case, the motion for a directed verdict made by defense counsel was granted.

II.
The legal standards pertaining to judicial conduct come primarily from three sources. The Mississippi Constitution mandates:
No judge of any court shall preside on the trial of any cause, where the parties or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, except by the consent of the judge and of the parties... .
Miss.Const. art. 6 § 165 (1890). The statutes of this state also regulate judicial conduct and provide an additional instance which requires a judge to disqualify him or herself from presiding over a case, when the judge may have been "of counsel." Miss. Code Ann. § 9-1-11 (1972) provides:

*901 The judge of a court shall not preside on the trial of any cause where the parties, or either of them, shall be connected with him by affinity or consanguinity, or where he may be interested in the same, or wherein he may have been of counsel, except by the consent of the judge and of the parties.
In addition to the constitutional and statutory provisions regulating judicial conduct, the Code of Judicial Conduct, Canon 3 C(1), requires disqualification of a judge under the following conditions:
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding:
When the conduct of a judge is being examined under the dictates of a canon of the Code of Judicial Conduct, "the Canon enjoys the status of law such that we enforce it rigorously, notwithstanding the lack of a litigant's specific demand." Collins v. Dixie Transport, Inc., 543 So.2d 160, 164 (Miss. 1989); Jenkins v. Forrest County General Hospital, 542 So.2d 1180, 1181 (1989); Jenkins v. State, 570 So.2d 1191, 1192 (Miss. 1990). The standard by which this Court determines if a judge should have disqualified him or herself, is an objective standard under Canon 3. "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." Rutland v. Pridgen, 493 So.2d 952, 954 (Miss. 1986); Jenkins, 570 So.2d at 1192; Collins, 543 So.2d at 166. The presumption is "that a judge, sworn to administer impartial justice, is qualified and unbiased. To overcome the presumption, the evidence must produce a `reasonable doubt' (about the validity of the presumption)[.]" Turner v. State, 573 So.2d 657, 678 (Miss. 1990). When a judge is not disqualified under the constitutional or statutory provisions, "the propriety of his or her sitting is a question to be decided by the judge and is subject to review only in case of manifest abuse of discretion." Buchanan v. Buchanan, 587 So.2d 892 (Miss. 1991); Turner, 573 So.2d at 677; Ruffin v. State, 481 So.2d 312 at 317 (1985) (quoting McLendon v. State, 187 Miss. 247, 191 So. 821, 823 (1939)).
Under the appropriate standard, the judge is presumed qualified and unbiased. This presumption may only be overcome by evidence showing beyond a reasonable doubt that the judge was biased or not qualified. If a reasonable person, knowing all the circumstances, would doubt the judge's impartiality, the judge is required to recuse him or herself from the case.
Such doubt is raised not only by the plaintiff sub judice but also by Judge Williamson's recusal of himself in a similar case. In Triplett v. Joshi and Neshoba County General Hospital, 595 So.2d 847 (Miss. 1992) (without opinion), this Court reviewed a case wherein Judge Williamson recused himself due to impartiality where the plaintiff was suing Dr. Joshi and Neshoba General in a medical malpractice action and where Dr. Soriano was listed as one of the plaintiff's witnesses. The plaintiff's attorney was the same as in the case at bar. A very similar situation existed in the case at bar; yet, Judge Williamson did not recuse himself in this instance. If he felt compelled to recuse himself in Triplett, many of the same compelling arguments were here present.
We note that Davis v. Joshi, Ganti, and Neshoba County General Hospital, 611 So.2d 904 (dec. Dec. 17, 1992 on pet. for rehearing), also has the same plaintiff's attorney, the same defendants, the same trial judge, and the same recusal motion with the same argument; this Court reversed and remanded for a new trial. In the case here decided, the trial judge directed a verdict. Because of his failure to recuse and his ruling and ours in like cases, we must reverse and remand.
Also, under the evidence adduced at the hearing sub judice and a review of like cases from the same circuit district, a conflict of interest is apparent. Judge Williamson had represented the hospital trustees *902 at one time as counsel. In fact, Judge Williamson participated in the hospital's interviews with Dr. Joshi during the hiring process. The contract of employment was drawn by Judge Williamson's then associate and the contract so drawn required all parties pledge to support Dr. Joshi professionally and economically. Even if Judge Williamson did not feel any conflict of interest, his participation in Dr. Joshi's employment creates the appearance of a conflict. A reasonable person would doubt the judge's impartiality.
Judge Williamson's paramount reason to refuse the recusal seems to be the inconvenience it would have caused. He even commented on the inconvenience a prior recusal had caused. This Court does not recognize inconvenience as a factor to be considered when deciding a recusal motion. More than inconvenience must be shown in order to refuse a recusal motion where there is some doubt as to a judge's impartiality. A recusal decision is entirely dependent on the peculiarities of each case at bar. Recusal motions must be considered on their own circumstances.
Even so this Court notes that Judge Williamson had before him at least four cases where the facts argued by the plaintiff for recusal were identical: the lawyer for the plaintiff was the same, the proposed expert witness was the same, with the only difference being the attorneys for the defendant. We note that each case had its own facts and nuances of Judge Williamson involvement with the particular plaintiff or situation. This evidence, these contacts, and the judge's previous recusal create an appearance of impropriety and therefore lead to reversal. Collins has presented evidence that Judge Williamson is possibly partial.
The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards and is consistent in the application. Cf. Nationwide Mutual Ins. Co. v. Evans, 553 So.2d 1117, 1119 (Miss. 1989). In the case at hand, Judge Williamson did abuse his discretion in refusing to recuse himself from the case.

III.
Because doubt as to Judge Williamson's impartiality is evident from the record, the directed verdict is reversed and this cause is remanded for further proceedings.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN and ROBERTS, JJ., concur.
McRAE, J., concurs in result only.
BANKS, J., concurs with separate written opinion joined by HAWKINS and DAN M. LEE, P.JJ.
BANKS, Justice, concurring:
I agree that the majority has reached the correct result but because I am unable to accept some of the language in the opinion, I write separately to delineate the basis of my concurrence.
As the majority correctly notes, we have adopted an objective standard for recusal on the basis of Canon 3 C. of the Code of Judicial Conduct. I believe that the application of that standard is the sole basis for recusal on this record. Applying the objective standard mandated in Canon 3 C., we must examine all of the circumstances to determine whether Judge Williamson abused his discretion in failing to recuse himself in this case.
This is one of at least four cases in which the grounds asserted for recusal were identical. In all of the cases plaintiff was represented by the same lawyer, Dr. Joshi and the Neshoba County Hospital were defendants, and Dr. Soriano was the primary expert witness for the plaintiff. In two cases, Judge Williamson recused himself. One, Triplett v. Joshi and Neshoba County General Hospital, 595 So.2d 847 (Miss. 1992, without opinion) involved a matter which arose during the time that Judge Williamson represented the defendant hospital. The other, currently pending before this Court, Price v. Joshi, 611 So.2d 874 (Miss. 1992), involved a matter which the judge recalled discussing with the hospital administrator. These additional factors were not present in the cases in which *903 Judge Williamson refused to recuse himself, including the instant case.
There is a distinction to be drawn between matters in which you have rendered advice or which arose with respect to a client during a time in which you were regularly consulted and those involving a former client in which you have given no advice and arising after the relationship with the client is severed. Compare, Rutland v. Pridgen, 493 So.2d 952, 953 (Miss. 1986) (Recusal not required in case of routine representation in unrelated matter ten years earlier.) and Haralson v. Haralson, 483 So.2d 378, 380 (Miss. 1986) (Recusal required where advice as to choice of attorney in matter before the court was given.) Nevertheless, viewing the circumstances from the eyes of the general public, there may be some justification for the majority according a modicum of weight to the recusal in these other cases.
Much more importantly, in my view, in all of the cases, the hospital was charged with direct negligence in the selection, supervision and retention of Joshi.
As the hospital's attorney, Judge Williamson was involved in interviewing Dr. Joshi, drafted his contract, and, for a period, advised the board during Joshi's tenure there. The hospital was a regular client for the judge for a period of years, 1981 until 1985, in temporal proximity to the 1987 incidents complained of and the litigation which followed. Add these facts to the circumstance that the judge had represented a client charging the plaintiff's only expert witness with malpractice and engendered a relationship in which that expert expressed reluctance to appear in the judge's courtroom, and one finds a totality of circumstances which compel the conclusion that "a reasonable person might harbor doubts" about the judge's impartiality.
Judge Williamson expressed concern about the inconvenience to the court and the parties when he had to recuse himself, sitting, as he was, in a single-judge district. This Court does not recognize inconvenience as a factor to be considered when deciding a recusal motion where there is reasonable ground for doubt as to impartiality.
Finally, while Judge Williamson focused upon a consideration of bias in fact and prior connection with the particular facts of the cases before him, our Canon speaks to appearance. The record, then, leaves us in considerable doubt as to whether the correct legal standard was applied. In such cases our standard of deference to the discretion of the trial judge evaporates. Cf. Nationwide Mutual Ins. Co. v. Evans, 553 So.2d 1117, 1119 (Miss. 1989). In my view, while none of the factors standing alone would necessarily dictate recusal in the instant case, in combination they create reasonable doubt as to impartiality and, therefore, Judge Williamson erred in failing to recuse himself.
As in Davis v. Joshi, 611 So.2d 904 (Miss. 1992) (on Petition for Rehearing), we are compelled to reverse and remand for new trial for that reason.
In Davis the case went to jury verdict. Here it was disposed of by directed verdict. There may be circumstances in which a failure to recuse might be deemed harmless error but we decline to enter such an analysis here. It should suffice to say that in the trial of a case, the effect of bias is often undetectable from the record and the proper course in all but the most unusual circumstances is to reverse. In the words of the United States Supreme Court in Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) dealing with the appropriate remedy for failure to recuse under the federal statute identical to Canon 3 C., "it is appropriate to consider the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." Id. 486 U.S. at 864, 108 S.Ct. at 2205.
HAWKINS and DAN M. LEE, P.JJ., join this Opinion.