**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2001-CA-01911-SCT**

*WASHINGTON MUTUAL FINANCE GROUP, LLC*
*f/k/a CITY FINANCE COMPANY*

*v.*

*GRETA BLACKMON, LOUISE BLUE, GLENDA*
*CHAMBERS, ANNIE CLARK, WILLIE EARL*
*CONWAY, LILLIE HARRIS, ROBIN HORTON,*
*LINDSEY HORTON, LORENE JACKSON, LIZZIE*
*LOFTON, JESSIE McCLUNG, WILLIE McGEE, LOU*
*WATERS, EARNEST CLAIBORNE, TINA CROSS,*
*ALFRED GARRETT, PERCY MASON, KENNETH*
*HILL, ZENESTER MOORE, MATTIE MILES,*
*PATRISHANE GORDON, JANIE MASON, DORIS*
*GARRETT, HAZEL CLAIBORNE, DAVID*
*FERGUSON AND LINDSEY HORTON*

<u>**ON VERIFIED MOTION FOR RECUSAL**</u>

**EN BANC.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1.     The appellees have filed their Verified Motion for Recusal, urging that a majority of this Court,

specifically, Chief Justice Pittman, Presiding Justices Smith and Waller, and Justices Cobb and Carlson,

recuse themselves.  Due to the importance of the issue, not only in this case but in other cases before the

Court and for the future, those justices have submitted the motion and those filed in other cases to the en

banc conference for consideration by the full Court.

¶2.     The motion before us grows out of an Emergency Complaint filed with the Mississippi Commission on Judicial Performance on August 28, 2003, by the five subject justices against then Presiding Justice C. R. McRae[1] wherein it is charged, inter alia, that Justice McRae improperly used his judicial office for the benefit of  Shane Langston and Langston, Sweet & Freese, P.A., a law firm representing the appellees here.  In addition, the motion argues that the law firm of Butler, Snow, O'Mara, Stevens & Cannada, PLLC,  represents the five justices in the judicial disciplinary proceeding and also represents clients which have a significant interest in the present case.

¶3.     Having considered the motion, responses, and the appellees' rebuttal, the Court finds that the motion is without merit and should be denied as to each of the five justices for the reasons stated in this opinion.

¶4.     Our Code of Judicial Conduct requires that judges inform the appropriate authorities when they have information indicating that there is a substantial likelihood that another judge has committed violations of the Code of Judicial Conduct raising substantial questions as to the latter's fitness for office.  Miss. Code of Jud. Conduct, Canon 3D(1).  On August 28, 2003, the five justices filed with the Mississippi Commission on Judicial Performance an Emergency Complaint raising a number of issues concerning Justice McRae's conduct and the performance of his judicial responsibilities.  In so far as they relate to the present motion, these issues include the charge that Justice McRae used his office to promote his personal interests and those of his family.  The complaint further states:

> Justice McRae has a close relationship with the family of Shane and Cynthia Langston, attorneys actively practicing in Mississippi.  This relationship has become even closer since the marriage of his daughter, an associate in Shane Langston's firm, to Shane Langston. This relationship has on a number of occasions required Justice McRae to recuse himself,

[1]On January 5, 2004, Presiding Justice McRae's term of office ended when his successor, Justice Jess H. Dickinson, took the oath of office.

2

however reluctantly, in appeals in which the Langstons have an interest. . . . In an effort to promote their interest, having recused, Justice McRae, without consulting with other members of the Court and contrary to prior decisions of the Court, personally (and incorrectly) advised the attorneys in these cases that they were entitled to have a special justice appointed by the Governor. . . .

¶5. Comments about Justice McRae ascribed to Chief Justice Pittman in two newspaper articles are also cited as showing hostility to Langston and his firm. The Kosciusko *Star Herald* quotes Chief Justice Pittman as stating that "[I]t shouldn't go unnoted that McRae's son-in-law (Shane Langston) is the one challenging Waller's service on the court since he also helps lead the Mississippi National Guard, which is part of the executive branch and must answer to the governor." In the same article, he is quoted as saying that "I am saddened that we make headlines that probably concern you, but this is a fight about protection of the public interest and people who don't give a damn about the public interest." In a *Clarion- Ledger* article, Chief Justice Pittman is described as suggesting that the Court will run smoother when Justice McRae is gone and the new justice, Jess H. Dickinson, comes on board.

¶6. The movants also assert that W. Scott Welch, III, and the Butler Snow law firm represent the five justices in Justice McRae's disciplinary proceedings, and that the justices sought to have Welch appointed "special prosecutor" in the those proceedings. The Butler Snow firm has filed an amicus curiae brief in the present case on behalf of Mississippi Bankers Association, and, it is asserted, represent a non-party client who will have a vital interest in the outcome of the present case.

¶7. In fact, neither Welch nor the firm represents any of the justices. In support of their statements regarding Welch and the Butler Snow firm, the movants have offered Welch's affidavit in which he acknowledges that he was contacted regarding representation, but likewise declares under oath that he was never retained, that he declined to undertake representation, and that neither he nor his firm represent the five justices. The movants also offer a Motion to Direct Employment of Special Counsel by which the

3

justices did indeed recommend Welch as special counsel; however, this motion was overruled by the Commission and the disciplinary proceedings are being prosecuted by Commission counsel.

¶8.     The motion also alleges that Justice Carlson or his family have some kind of relationship with or interest in First Security Bank, a corporation which is not a litigant in the present matter. It argues that because of this relationship Justice Carlson cannot sit on any cases such as the present one involving credit insurance or credit related products.

¶9.     Finally, the movants raise a legal challenge filed in the Chancery Court of the First Judicial District of Hinds County to Justice Waller's service on this Court filed by Shane Langston, which was dismissed without prejudice on August 29, 2003.

## DISCUSSION

### Standard of Proof

¶10.     The grounds here asserted for recusal do not implicate constitutional and statutory disqualifications, nor are such disqualifications alleged. Miss. Const. art. 4, § 165; Miss. Code Ann. § 9-1-11 (Rev. 2002). Otherwise, under the Code of Judicial Conduct, judges should recuse "in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances . . . ." Miss. Code of Jud. Conduct, Canon 3E(1). Included among those circumstances which might cast doubt on a judge's impartiality are those in which the judge has a personal bias or prejudice concerning a party (Canon 3E(1)(a)), the judge or a member of the judge's family residing in the judge's household has a financial interest in the subject matter in controversy or in a party to the proceeding (Canon 3E(1)(c)), or the judge or close relatives has any other interest that could be substantially affected by the outcome of the proceeding, (Canon 3E(1)(d)). The specific circumstances listed in Canon 3E(1) are examples and do

4

not constitute an exclusive list of grounds for recusal. *Upton v. McKenzie*, 761 So. 2d 167, 172 (Miss. 2000); *Buchanan v. Buchanan*, 587 So. 2d 892, 896 (Miss. 1991).

¶11. The law recognizes that there must be confidence in judges' impartiality in order for our judicial system to function. Those bringing their disputes before the courts must do so in a well grounded belief that the law will be applied fairly to the facts of their cases. However, there must be an equilibrium between this need for impartiality and the need to prevent the frivolous and unnecessary disqualification of those elected to perform judicial duties. The two firms addressed by the pending motion–the Langston firm and Butler Snow–are among the most active practicing before the Supreme Court, and the recusal of five justices in cases presented by these firms would essentially require the constitution of special courts to hear a substantial portion of the Court's docket. Where required by fairness and compliance with the standards of the Code of Judicial Conduct, the duty to recuse prevails; but otherwise, the judges have a duty to serve unless they cannot adjudicate the litigants' claims fairly.

¶12. In striking the required balance, the law presumes that the judge is qualified and unbiased. In order to overcome the presumption, the movant must offer evidence which will produce a reasonable doubt about the validity of the presumption. *Steiner v. Steiner*, 788 So. 2d 771, 775 (Miss. 2001); *Tubwell v. Grant*, 760 So. 2d 687, 689 (Miss. 2000); *Bredemeier v. Jackson*, 689 So. 2d 770, 774 (Miss. 1997). Whether a party seeks recusal based on these specific examples or on the general standard of Canon 3E(1), that party bears the burden of proving the allegations and of demonstrating that the facts justify doubt as to the judge's impartiality in the mind of a reasonable person who knows all the circumstances. Indeed, the burden of proving allegations that a judge's hostility toward attorneys is such as to require recusal in their clients' cases is a particularly heavy one. *Payton v. State*, 2003 WL 22510533, *12 (Miss. 2003). The recusal process must not degenerate into a technique for a lawyer to

5

utilize in constructing a forum favorable to the positions which may favor the litigants represented by the lawyer.

### Alleged Hostility of Justices Toward Shane Langston and His Firm

¶13.    It must be said at the start that the action of the filing justices as to Justice McRae's conduct was not initiated because of personal dislike of Justice McRae. Concern over the conduct of another or disapproval of the latter's actions, does not equate with personal hostility toward that person or those associated with him. The complaint against Justice McRae was initiated due to conduct which, in the minds of the filing justices, violated their fellow justice's responsibilities to the Court and to the public and their concern for the independence and integrity of this Court as the highest tribunal in the state.  Whether the charges justify discipline is not for this Court to decide.  The matter has been reported to the Commission on Judicial Performance which now has the charges under consideration and which will ultimately decide whether to recommend sanctions.  If the Commission does recommend disciplinary action, the matter will be decided by a special tribunal empaneled by the Secretary of State under Article 6, Section 177A of the Mississippi Constitution and Rule 11 of the Rules of the Commission.  It is appropriate to observe, however, that in its public ruling on whether to suspend Justice McRae pending the conclusion of the proceedings, the Commission has found that his conduct did violate several provisions of the Code of Judicial Conduct.  This is mentioned here merely to demonstrate that there was a reasonable basis to file the complaint of greater import than any mere ill will of the justices toward their colleague.

¶14.    Although the argument is made that the Emergency Complaint against Justice McRae contains language which demonstrates hostility toward Shane Langston and his firm, in fact, there is no language critical of the Langstons in that complaint.   The charges are against Justice McRae with no suggestion or intimation that the Langstons sought to influence his actions or took advantage of them.  Without such

6

language, in order to find prejudice against the litigants now before the Court, it is necessary to infer from the complaint that the statements regarding Justice McRae's conduct were animated by malice rather than in response to the justices' duty, and then to further infer that this animosity extends to those who are associated with Justice McRae, and finally to further infer that the animosity extends beyond the Langstons to their clients. Such a three-tiered progression of inferences is not justified by the facts.

¶15. Even if it is assumed for the sake of argument that the justices bear hard feelings against the Langstons, the courts have generally held that such feelings entertained as to attorneys will not be imputed to their clients–particularly clients in cases unrelated to those in which the animosity arose. Jeffery M. Shaman, Steven Lubet & James J. Alfini, Judicial Conduct and Ethics § 4.08, at 123 (3d ed. 2000). To warrant disqualification, the judge's bias toward a litigant's counsel must be extreme. Richard E. Flamm, Judicial Disqualification, § 4.4.4, at 124 (1996).

¶16. Recusal may, however, be required where animosity between an attorney and a judge is extreme and is one of several factors which, taken together, raise concerns about the judge's ability to preside impartiality. In *Davis v. Neshoba County General Hospital*, 611 So. 2d 904 (Miss. 1992), this Court found that tension between the trial judge and plaintiff's counsel, taken with other factors, required recusal. There, the transcript of the recusal hearing included an exchange in which tension was great over a previous case in which the attorney accused the judge of being racially biased. In addition, the judge had, as an attorney, represented the hospital trustees for several years and had represented the hospital at the time when the hospital recruited one of the defendants in the case. The judge had participated in an interview with that defendant and had signed the minutes of the meeting during which the hospital had said that it would aggressively help the defendant build a successful medical practice. Under those facts, the Court found that the judge's relation to the hospital-party with the obvious tension between the judge and

7

counsel reflected in the hearing would cause a reasonable-minded person to question whether the judge would have a personal bias or prejudice concerning the attorney's client.

¶17.    In the federal system, 28 U.S.C. § 144 addresses recusals and, like Canon 3E(1)(a) of the Code of Judicial Conduct, requires recusal where there is a demonstrated prejudice against a party.  In *Davis v. Board of School Comm'rs of Mobile County*, 517 F. 2d 1044 (5th Cir. 1975), addressing animosity toward counsel as imputed bias against a party, the Fifth Circuit has said:

> [Plaintiffs] seek disqualification on an imputation theory the bias against their lawyer is imputed to them.  Read broadly, this peremptory challenge type approach would bid fair to decimate the bench.  Lawyers, once in controversy with a judge, would have a license under which the judge would serve at their will. . . .One answer is that "party" as used in § 144 does not include counsel as such . . . .  [Citations and footnote omitted.]

*Davis,* 517 F.2d at 1150.

¶18.    Later, citing *Davis v. Board of School Comm'rs of Mobile County*, that court said:

> Bias for or against an attorney, who is not a party, is not enough to require disqualification unless it can also be shown that such a controversy would demonstrate a bias for  or against the party itself. . . . In order for bias against an attorney to require disqualification of the trial judge, it must be of a continuing and personal nature and not simply bias against the attorney or in favor of another attorney because of his conduct.  [Citation omitted.]

*Henderson v. Dep't of Pub. Safety & Corrections*, 901 F.2d 1288, 1296 (5th Cir. 1990).

¶19.    In contrast to Mississippi's version, Nevada's version of Canon 3E(1)(a) expressly includes animus toward an attorney as a ground for disqualification.  Nevertheless, the supreme court in that state has held that a judge's bias toward an attorney is largely irrelevant.  Addressing the question, that court said:

> In a small state such as Nevada, with a concomitantly limited bar membership, it is inevitable that frequent interactions will occur between the members of the bar and the judiciary.  Thus, allegations of bias based upon a judge's association with counsel for a litigant pose a particularly onerous potential for impeding the dispensation of justice. [Citing *In re Petition to Recall Dunleavy,* 769 P. 2d 1271, 1275 (Nev. 1989).]  Furthermore . . . if a litigant could successfully challenge a judge based upon allegations of bias against counsel for the litigant, "it 'would bid fair to decimate the bench' and lawyers, once in a

8

controversy with a judge, 'would have a license under which the judge would serve at their will.'" (quoting *Davis v. Board of School Com'rs of Mobile County*, 517 F. 2d 1044, 1050 (5th Cir. 1975). This policy still applies, and we continue to believe that to permit a justice or judge to be disqualified on the basis of bias for or against a litigant's counsel in cases in which there is anything but an extreme showing of bias would permit manipulation of the court and significantly impede the judicial process and the administration of justice.

*City of Las Vegas Downtown Redev. Agency v. Hecht*, 940 P.2d 127, 129 (Nev. 1997).

¶20.   In Pennsylvania, the supreme court faced a similar situation. There the judge had made statements in a prior case wherein he challenged the sincerity, truthfulness and integrity of the attorney. The supreme court agreed with the finding of the superior court that a judge's personal bias and hostility toward a party's counsel, standing alone, is irrelevant and does not require recusal. *Reilly v. Southeastern Pa. Transp. Auth.*, 489 A.2d 1291 (Pa. 1985).

¶21.   In *Henderson v. G&G Corp.*, 582 So. 2d 529 (Ala. 1991), a judge had testified against an attorney who later represented a party in the case before the judge. The judge was alleged to have testified that he would not believe the attorney under oath. The Alabama Supreme Court held that these circumstances were not sufficient to show prejudice requiring recusal.

¶22.   In *People v. Fitzgibbons*, 909 P. 2d 1098 (Colo. 1996), an attorney who was charged in a disciplinary proceeding sought recusal of the vice-chair of the hearing committee, asserting that counsel for the charged attorney had previously been admonished by a letter signed by the vice-chair. The court held that recusal was not required and that a demonstration of prejudice against counsel does not itself require recusal, but that the judge should recuse only if the judge has manifested an attitude of such hostility or ill will toward the attorney so that the judge's impartiality can be reasonably questioned.

¶23.   Given the frequent interaction of attorneys and judges involving matters of serious legal, social and economic consequences, it is to be expected that there will from time to time be conflict between them in

the course of their professional responsibilities. Judges are often called on to discipline attorneys and to criticize their conduct. Attorneys frequently challenge rulings of the judges. However, tradition and authority do not dictate that each time an attorney perceives the possibility that a judge may not think kindly of him he is entitled to have the judge removed from a case. On the contrary, unless the antagonism is extreme and clearly demonstrated, or unless the animosity so demonstrated is coupled with other prejudicial circumstances, recusal is not mandated. Considering these authorities, it is clear that the language of the Emergency Complaint filed against Justice McRae regarding the Langston family and firm does not require recusal of the justices. Nothing there indicates any hostility toward the Langstons, certainly nothing that would arise to the level of bias against parties represented by them in other proceedings.

### The Relationship Between the Justices and W. Scott Welch and Butler, Snow, O'Mara, Stevens and Cannada, PLLC

¶24.    Scott Welch and his law firm, Butler, Snow. O'Mara, Stevens and Cannada, PLLC, are said to represent American General Finance, Inc., not a party here, but a corporation apparently having an interest in the outcome of the appeal. In addition, Welch has filed an amicus curiae brief in the case on behalf of Mississippi Bankers Association.[2]

¶25.    The movants charge that Welch and his firm have been retained to advise the justices in the proceedings against Justice McRae "and presumably, [regarding] the allegations relating to Appellees' attorney, Shane Langston." As discussed above, the complaint contains no allegations against Langston. Further, the firm has not been retained to represent the justices and does not represent them.

---

[2]The motion does not charge that Butler Snow represents a party in this case. Rather, the firm filed an amicus curiae brief on behalf of a non-party. It has been held in at least one other jurisdiction that "representing an amicus curiae is not the equivalent of representing a 'litigant' in an appeal," and that the relationship between the attorney filing the amicus brief and the judge does not disqualify the judge. *City of Las Vegas Downtown Redev. Agency*, 940 P.2d at 130.

¶26.   As evidence in support of this charge, the movants offer an affidavit executed by Welch, and excerpts from Justice Carlson's deposition given in the judicial performance proceedings. Neither the affidavit nor the deposition excerpts support the movants' claim. Welch states that the justices, in their official capacities, consulted with him with a view towards obtaining legal services, but that no attorney-client relationship was ever established since he declined to undertake representation. He denies that he or his firm has been retained by the justices or have any role in representing the Commission. In his deposition, Justice Carlson acknowledged that the Objection to Production of Subpoenaed Documents was prepared either by James Tucker or Welch. He also stated that Tucker and Welch were consulted but declined representation of the justices.

¶27.   Beginning on September 24, 2003, Justice McRae served subpoenae duces tecum and notices of depositions on the five justices and members of the Supreme Court staff. Because of this, the justices determined that they should obtain counsel for themselves and for the staff witnesses. The Butler Snow firm was contacted and over a period of approximately a week, the justices engaged in conversations with Welch as to the availability of his firm. Ultimately, the firm declined, but Welch indicated that he and James Tucker of the firm would be available to serve as special counsel for the Commission, as provided by Rule 8E of the Rules of the Mississippi Commission on Judicial Performance, if needed or desired. During this short period, the firm assisted the justices in preparing preliminary pro se motions, one for a protective order and one for appointment of special counsel for the Commission. Although the firm was made aware of the justices' concerns, no member of the firm appeared or argued the motions that were filed. Soon thereafter, other counsel was obtained and the Butler Snow firm had no further connection with the disciplinary proceedings. The motion suggesting Welch's and Tucker's appointment as special counsel was denied.

¶28. Even if it were assumed for the sake of argument that Butler Snow did represent or does represent the justices with regard to the judicial discipline matter, neither the constitution nor statutes impose disqualification of a judge in a case in which an attorney who has represented the judge is representing a party. Although Canon 3E(1)(d) of the Code of Judicial Conduct requires recusal where the judge's spouse or a person related to the judge within the third degree is acting as an attorney in the case, the Canon is silent as to an attorney who has represented the judge. Thus, the question is whether, otherwise, the facts surrounding the justices' contacts with Butler Snow would cause a reasonable person knowing all the circumstances to question the justices' impartiality.

¶29. Under some circumstances, this Court has held that a judge should recuse in a case where an attorney who represents a party also formerly represented the judge in personal litigation. *Aetna Cas. & Sur. Co. v. Berry*, 669 So. 2d 56 (Miss. 1996). There the judge had been represented in his divorce case by counsel for the plaintiff in the pending case. There was testimony that the attorney had been deeply involved in the judge's reelection campaign. In addition, there was testimony that the judge contacted one of the attorneys for defendants during the litigation, saying, "John, you do not care how this case turns out do you?" *Berry* is not analogous to the present situation in that the attorney there had extensive involvement with the judge over an appreciable period, being retained to represent him in personal litigation, and that the relationship was compounded by other factors.

¶30. The movants cite *Dodson v. Singing River Hospital System*, 839 So. 2d 530 (Miss. 2003), as recognizing that an attorney's representation of a judge is a significant factor compelling recusal. In *Dodson*, it was shown that the firm in question had represented the judge in his mother's estate and other litigation which extended over a period of several years, and that a member of the firm had been the judge's campaign treasurer. Further, the judge had, during the pendency of the *Dodson* case, recused in another

12

case due to his relationship with the firm, and he had gone to the offices of the firm to discuss, ex parte, the possibility of recusal.

¶31. In deciding the question, the Court looked not at a single factor, but at the totality of the circumstances.

> Justice Banks's concurring opinion in *Collins v. Joshi*, 611 So. 2d 898 (Miss. 1992), supports this position. In *Collins*, the trial judge had represented the trustees of Neshoba County General Hospital, one of the defendants in the subject suit, for four years . . . . Neshoba General hired Dr. Joshi, another defendant, during the judge's representation of the hospital . . . . The judge had also sued Dr. Soriano, the plaintiff's expert witness, on behalf of the hospital . . . . The majority concluded that the judge should have recused himself. Justice Banks wrote separately and stated, "In my view, while none of the factors standing alone would necessarily dictate recusal in the instant case, in combination they create a reasonable doubt as to impartiality . . . ." He also found a "totality of circumstances which compel the conclusion that 'a reasonable person *might* harbor doubts' about the judge's impartiality." (emphasis added). The same "totality of circumstances" inquiry is appropriate in this case, and a reasonable *person*, not a lawyer or judge, might very well have harbored the same doubts about Judge Harkey's impartiality in this case. [Citations omitted; emphasis in original.]

*Dodson*, 839 So.2d at 534.

¶32. A distinction is made between an attorney's representation of a judge in personal matters on the one hand and in his official capacity on the other. "Disqualification may not be required if the attorney before the judge has represented him on the basis of the judge's official acts." Shaman, Lubet & Alfini, *supra*, § 4.18, at 146. The Emergency Complaint against Justice McRae was filed by the justices in their institutional capacities pursuant to the requirement of the Code of Judicial Conduct. All relevant contacts between Welch and the justices have been in connection with the judicial performance filing under the mandate of Canon 3D(1).

¶33. In *Reilly*, one attorney in that case had represented all the Commonwealth's justices and judges pro bono in a class action seeking increased judicial compensation. SPTA argued that, because of this

13

relationship, the trial judge should recuse. The Pennsylvania court rejected this argument, saying that such a ruling would require the attorney to forego trial practice in the state, since only those judges coming on the bench after the conclusion of the compensation litigation would be able to hear his cases. "No lawyer should be compelled to suffer such a disaster because of his *pro bono* representation of all the jurists of Pennsylvania." *Reilly,* 489 A. 2d at 1294.

¶34. The Minnesota Supreme Court has recently recognized that under some circumstances recusal will be required where the judge has been represented by an attorney presenting a case before him. *Powell v. Anderson*, 660 N.W.2d 107 (Minn. 2003). There, the Court vacated a decision authored by a judge of the intermediate appellate court, later removed from the bench, where the judge pleaded guilty to theft of over $300,000 from a trust fund for which he was acting as trustee. A member of the firm which represented a party in the *Powell* case also represented the trust during the time that the case was on appeal. In discussing the circumstances which would require recusal due to representation of the judge, the *Powell* court observed that four factors should be considered.

¶35. First, the reviewing court should consider the extent of the attorney-client relationship. "If the relationship consisted of a single, short episode, or even a series of sporadic contacts, disqualification is less likely than if it consisted of a long-term, continuous course of representation." *Id.* at 118.

¶36. Second, the nature of the representation should be considered. "A direct relationship, where the judge is represented personally, is more indicative of a reasonable question regarding the judge's impartiality *than a relationship that only involves the judge in some institutional or technical role.*" *Id.* (emphasis supplied).

¶37. Third, the court should consider the frequency, volume and quality of contacts between the judge and the attorney or firm. *Id.*

14

¶38. Fourth, the court should look to any special circumstances that may enhance or diminish the importance of disqualification, particularly in the eyes of the public. *Id.*

¶39. Applying the *Powell* factors, the limited involvement of the Butler Snow firm with the justices in the judicial performance proceedings is not disqualifying. The firm was in conversations with the justices for only a few days regarding a single matter in which the justices acted in their official capacities pursuant to the mandate of the Code of Judicial Conduct. The circumstances were such that it was necessary for the justices to seek representation quickly for forthcoming depositions. The matter on which they were consulted, serving as counsel for witnesses in the judicial disciplinary proceeding, was unrelated to the present case. The firm looked into the matter, assisted with preparation of preliminary motions, and then advised the justices that they were unable to accept retention. Under the *Powell* factors and the totality of the circumstances analysis of *Dodson*, recusal is not required.

### Public Comments by Chief Justice Pittman

¶40. The movants point to public comments made by Chief Justice Pittman which appeared in state newspapers, and argue that these statements require recusal. There is no allegation that any other justices joined in or endorsed these comments. Therefore, they impact only on whether Chief Justice Pittman should himself recuse in this case.

¶41. The reported remarks are relevant only if they show animosity toward Langston. Under the authorities cited above, animosity toward attorneys representing clients will in only the most extreme situations be found to be of a quality and degree which will suggest that a judge is biased against the parties represented by those attorneys. Certainly, the references to Langston in the *Clarion-Ledger* article and to Justice McRae's judicial disciplinary proceedings in the *Star Herald* do not warrant the conclusion that Chief Justice Pittman entertains such a level of hostility toward the Langston family and firm.

15

¶42. The movants argue that the Chief Justice's public comments praising Justice Dickinson somehow shows a bias which should disqualify the former from hearing this case. They have offered no authority for the proposition that recusal is required by a general show of respect for one attorney in a case or of an incoming judge even in comparison with another judge associated with a party, and we have found none.

¶43. It is also argued that the Chief Justice should recuse because Justice-elect Dickinson is attorney of record in this case, and the Chief Justice has appointed him as a special circuit judge for Forrest County. However, the record reflects that prior to the filing of the recusal motion, Dickinson took action to withdraw from the case. In *Placid Oil Co.*, it was argued that a judge's business relation with counsel for one of the parties should be disqualifying. However, the court held that since the counsel in question had withdrawn from the case, recusal was not necessary. *In re Placid Oil Co.*, 802 F.2d 783 (5th Cir. 1986). In any event, a complimentary statement as to an attorney should not be treated as an indication of bias in his favor.

### Justice Waller as a Party to Litigation Prosecuted by the Langston Firm

¶44. Justice Waller was the defendant in a suit filed by Shane Langston on behalf of a client who had a case pending before the Supreme Court.[3] That suit, challenging Justice Waller's qualification to serve on the Court, has since been voluntarily dismissed without prejudice. During the time when that suit was pending, Justice Waller routinely, on his own motion, recused himself from cases before this Court in which Langston was counsel. Now, the movants here argue that because Langston sued Justice Waller, the latter should recuse in this case.

---

[3]Wanda Doe v. William L. Waller, Jr., No. G 2002-208 S/2 (Chan. Ct. First Jud. Dist., Hinds County, Miss.).

16

¶45.    The suit against Justice Waller was filed many months ago and was pending long after the Langston firm appeared in this appeal. Although we address the merits of this claim, we also observe that M.R.A.P. 48C requires that motions to recuse appellate court judges be filed within thirty days following notification by the clerk that a case has been assigned to either appellate court, or within thirty days after the facts upon which the motion is based became known or could have been reasonably discovered by the party. Now, movants infer a bias by Justice Waller against the Langston firm and their present clients because that firm sued the justice. Under the authorities cited earlier in this opinion, personal animus held by a judge against an attorney does not, by itself, require recusal because it will not generally be found to be a bias against the litigant.

¶46.    Courts generally have been wary of requiring recusal where the alleged animosity or discord is the result of affirmative, hostile actions by the attorney. To do so without caution would create situations in which the judges would serve at the will of the lawyers–a circumstance generally thought to be intolerable. See *Davis v. Board of School Comm'rs of Mobile County*, 517 F.2d at 1150 ("Lawyers, once in controversy with a judge, would have a license under which the judge would serve at their will," quoted with approval in *City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 940 P.2d at 129; *Dunlop Tire Corp. v. Allen*, 725 So.960, 977(Ala. 1998) (to allow an attorney to compel recusal by filing a lawsuit against the judge "would allow a litigant to control judicial proceedings whenever a litigant becomes dissatisfied with the course of the proceedings.")). The Eighth Circuit has said:

> We subscribe to the view that motions to recuse should not "be viewed as an additional arrow in the quiver of advocates in the face of [anticipated] adverse rulings." *TV Communications Network, Inc. v. ESPN, Inc.* 767 F. Supp. 1077, 1081 (D. Colo. 1991). We hold that KPERS' petition for a writ of mandamus is untimely as to the Boatmen's and Blackwell matter, that it is interposed for suspect tactical and strategic reasons, and that it can and should be denied for these reasons alone.

*In re Kan. Pub. Employees Ret. Sys.,* 85 F. 3d 1353, 1360 (8th Cir. 1996).

¶47. Even where it is the litigant himself who sues the judge of his case, our Court is reluctant to require recusal. See *Evans v. State*, 725 So. 2d 613 (Miss. 1997), but also see, in an extreme circumstance, contra, *Johnson v. Miss.*, 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed. 2d 423 (1971).

¶48. Given the fact that the chancery court litigation between Justice Waller and Langston's client was initiated by Langston, was filed on behalf of a client not involved in the present appeal, and has now been dismissed on Langston's motion, that action does not require Justice Waller to recuse.

## Justice Carlson's Interest in First Security Bank.

¶49. The motion states that "it is believed that Justice Carlson and/or his family members has a relationship with and/or interest in the First Security Bank of Batesville and derives private income from that entity." This case involves issues regarding loan practices and credit insurance, and the motion argues that it is believed that First Security sells credit insurance and other credit-related products that are central to the case.

¶50. In support of the allegation of financial interest, the movants offer Justice Carlson's Statement of Economic Interest filed with the Mississippi Ethics Commission on April 2, 2003. The statement indicates that Justice Carlson was a director of First Security Bank until June, 2002, when he resigned. It also shows that he or his spouse receives income from certificates of deposit, investments, and interest from the bank. The motion does not otherwise indicate the nature or the extent of his income from this source.

¶51. Under *Steiner, Tubwell* and *Bredemeier*, *supra*, as well as other authorities, in order to overcome the presumption against bias, the movant must offer evidence which will produce a reasonable doubt about the validity of the presumption. The motion's allegations in this regard are supported only by Justice Carlson's statement showing that he or his spouse derive some income through the bank.

18

¶52. Canon 3E(1)(c) includes as possible grounds for recusal the fact that "the judge knows that the judge, individually or as a fiduciary, or the judge's spouse or member of the judge's family residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding."

¶53. The respondents points out that the motion for recusal is, as to this issue, untimely under M.R.A.P. 48C. The notice of appeal was filed on November 29, 2001, and, the respondents argue that with the Ethics Commission statement dated stamped April 2, 2002, any recusal based on that statement should have been filed by May 8, 2003, or soon thereafter. Furthermore, Justice Carlson's banking connection was publicly discussed by Justice McRae in his dissent to **Hewes v. Langston**, 853 So. 2d 1237, 1258 (Miss. 2003) (McRae, P.J., dissenting), which was published on September 11, 2003.

¶54. Neither Justice Carlson nor his spouse is alleged to have an interest in Washington Mutual or in any other corporate party to this litigation, nor are they individual parties. Thus, they do not, in the words of Canon 3E(1)(c), have a "financial interest in the subject matter in controversy." This leaves for consideration whether they have "any other interest that could be substantially affected by the outcome of the proceeding," under the second clause of Canon 3E(1)(c), or have "an interest that could be substantially affected by the outcome of the proceeding," under Canon 3E(1)(d). A distinction is to be made between the first of Canon 3E(1)(c) and these additional provisions. The first clause of Canon 3E(1)(c) does not explicitly require a *substantial* interest in the subject matter to justify recusal; however, the second clause and the language of Canon 3E(1)(d) do require that any other interest be *substantially* affected by the outcome of the proceeding.

¶55. Under the latter clause, Justice Carlson's obligation to recuse would depend on factual issues such as the nature of any credit products sold by the bank, the magnitude of the bank's credit product sales in

19

relation to the overall income of the bank, and the amount of income derived by Justice Carlson from his investments with the bank. Income from certificates of deposit and interest yielding competitive rates which would not be dependent on the bank's earnings would not be relevant.

¶56. 28 U.S.C. § 455(b) is the federal equivalent of Canon 3E(1)(c), requiring recusal where the judge or his spouse has "any other interest that could be substantially affected by the outcome of the proceeding." Applying that statute, the Fifth Circuit has held that recusal was not required in an antitrust action brought against twenty-three Texas banks where the sitting judge owned a large investment in a nonparty Texas bank that might be adversely affected by the ruling. *In re Placid Oil Co.*, 802 F.2d at 787-88. There, it was argued, as here, that any adverse ruling to the bank-defendants would have a dramatic impact on the entire banking industry and thus on the judge's investments as well. The court said:

> We find no basis here for requiring recusal. We are unwilling to adopt a rule requiring recusal in every case in which a judge owns stock of a company in the same industry as one of the parties to the case, and Petitioners, by showing only an indirect and speculative interest, have failed to sufficiently distinguish this case from that situation. A remote, contingent, and speculative interest is not a financial interest within the meaning of the recusal statute. *cf. City of Houston*, 745 F. 2d at 931, nor does it create a situation in which a judge's impartiality might reasonable be questioned.

*Placid,* 802 F.2d at 786-87.

¶57. Considering § 455(b), the Seventh Circuit has held that the mere fact a district judge's spouse holds interests in trusts that include municipal bonds does not require his recusal from a case in which a party sought an injunction against the redemption of bonds by New York City Development Corporation. Although the trusts in which the judge's spouse held interests did not hold any of the bonds of the party-development corporation, it was argued, as is argued here, that the court's decision could affect the value of bond funds generally, including those of the judge's spouse. *New York City Dev. Corp. v. Hart*, 796 F.2d 976 (7th Cir. 1986). The court in its analysis said:

20

HDC relied on § 455(b)(4), arguing that the disposition of the case may affect the value of bond funds, including those in which the district judge has an interest. Judge Hart found this argument insufficient, as do we. The value of many assets, even the performance of the economy as a whole (and hence all assets), may depend on rules of law. It could be said that no judge who owns a house should render a decision that potentially affects the value of real estate in general, that no judge who owns stock should decide a case under the securities or antitrust laws, and so on. Effects of this sort are both ubiquitous and too indirect to require disqualification. Cf. *Union Carbide Corp. v. U.S. Cutting Service, Inc.*, 782 F. 2d 710, 714-15 (7th Cir. 1986). The effects are small, and almost every judge will have some remote interest of this sort. Moreover, the effects may have offsets that are difficult to predict. A decision under the securities laws that diminishes somewhat the value of bonds may increase somewhat the value of stocks; no judge with a diversified portfolio will be able to predict the effect on his wealth, and therefore there is little risk of either actual bias or the appearance of impropriety.

796 F.2d at 979-80.

¶58. The Eighth Circuit has held that a judge's interest in a parent corporation would not disqualify him from sitting on a case in which the corporation's subsidiary was a litigant. Under a complicated set of facts, a party in the subsidiary's suit filed a separate action against the parent in an apparent effort to force the judge's recusal. Citing *Placid*, the court said that it was reluctant to create a rule which would require judges to recuse from all cases that might remotely affect nonparty companies in which they own stock. *In re Kan. Pub. Employees Ret. Sys.*, 85 F.3d at 1362.

¶59. The Eleventh Circuit is also in accord with the *Placid* holding. In *Gas Utilities Co. of Ala., Inc., v. Southern Natural Gas Co.*, 996 F.2d 282 (11th Cir. 1003), relying on *Placid*, the court held that a judge whose wife and father-in-law held interests in land leased to gas producers was not required to recuse from an anti trust action between gas suppliers in the area who did not hold leases from the judge's relatives.

¶60. The broadly accepted rule is that in order for Canon 3E(1)(c) or (d), to require recusal, the judge must either own an interest in a party litigant or, if he does not, there must be a showing–not mere

21

speculation-- that he will be substantially affected by the decision of the case. Such a showing has not been made here. There has been no such showing as to Justice Carlson.

### Representation of Justice McRae by Rebecca Langston

¶61. Reference is made in the motion to the fact that Rebecca Langston, Shane Langston's wife and an attorney with his firm, represents Justice McRae in the pending judicial performance proceeding, and the movants argue that her representation of Justice McRae requires the justices who filed the charges against him to recuse in this case. The argument here is similar to that made regarding the references to the Langston firm in the Emergency Complaint. The fallacy is the same. For recusal to be required, it must be inferred that any animosity between Justice McRae and the filing justices reaches to clients of the firm in which his daughter practices. Such an inference is not warranted. The justices are not parties to the disciplinary proceedings; they filed the Emergency Complaint under their responsibility as enunciated in the Code of Judicial Conduct, and the matter has been prosecuted by counsel for the Commission on Judicial Performance. As discussed above, even if hostility toward Justice McRae were assumed, it will not justify a conclusion that the hostility extended to his counsel and their clients.

¶62. It is neither unexpected nor improper that a daughter will offer her assistance to her father when serious charges are made against him. However, the Langston firm was representing their clients before this Court at the time that Rebecca Langston elected to represent Justice McRae. That decision, however appropriate on her part, cannot be used by the firm as a device by which they may force the creation of a special court to hear their other clients' cases.

### CONCLUSION

¶63. We write today to clarify for the practicing bar issues concerning the relationship between attorneys and judges and the impact of those relationships on the qualification of judges to preside in particular cases.

22

Perceived bias by judges cannot generally be inferred from attorneys' association with causes, controversies, issues or persons which the judges may find objectionable. The presumption against bias remains strong, and can be overcome only by evidence and not by mere conjecture or speculation. Our judges are perfectly capable of distinguishing between attorneys, their clients, and the legal issues which the attorneys present, even where animosity against the attorneys may exist–a condition which does not exist as to the Langston firm. Such animosity will require recusal only where it is of an extreme character or compounded with other factors which will justify doubt as to the judge's impartiality in the minds of reasonable and informed people.

¶64.  Likewise, favoritism toward attorneys is not to be extrapolated from the mere fact that those attorneys have assisted judges in the performance of official obligations. Where attorneys represent judges, we will look to the totally of circumstances of the representation, as we said in *Dodson*, and *Collins*, applying the factors outlined by the Minnesota court in *Powell v. Anderson*.

¶65.  Too often of late, the public, the media, and, most unfortunately, the bar, have tended to treat litigation as wars between attorneys in which the personalities of the attorneys and sometimes the judges are the focus. Too often members of the bar use recusal as a trial tactic. This is a sad and inaccurate misapprehension of the legal system as it should, and by and large, as it does exist. The nature of the profession is such that attorneys and judges often draw their friends and daily associations from their vigorous adversaries. They are schooled and nourished in an adversary system in which they learn quickly that lawyers are merely representatives of clients and positions. Those who do not generally live out their careers in misery. The judges of our state are thoroughly capable of distinguishing the attorneys from their clients and to recognize their duty to the public and the law. Our laws and rules governing recusal are written to allow remedy in the few cases where judges' conduct indicates that they may truly appear to fall

23

short of the responsibility to make those distinctions.  The recusal mechanism must be guarded carefully to check its use as a weapon to be wielded in a campaign to maneuver onto more favorable fields of battle.

¶66.    The motion for recusal of these justices fails to demonstrate facts that would cause a reasonable person knowing all the circumstances to doubt the justices' impartiality in the litigation between the parties now before the Court.  For that reason, the motion is denied.

¶67.    **APPELLEES' VERIFIED MOTION FOR RECUSAL, DENIED.**

**SMITH AND WALLER, P.JJ., COBB AND CARLSON, JJ., CONCUR.  DIAZ, EASLEY, GRAVES AND DICKINSON, JJ., NOT PARTICIPATING.**