# IN THE SUPREME COURT OF IOWA

No. 16–0005

Filed May 20, 2016

Amended August 16, 2016

**IN THE MATTER OF HONORABLE MARY E. HOWES,**
District Court Judge of the Seventh Judicial District.

---

On application of the Iowa Commission on Judicial Qualifications.

The Iowa Commission on Judicial Qualifications filed an application for judicial discipline recommending this court discipline a district court judge for various violations of the Iowa Code of Judicial Conduct. **APPLICATION GRANTED AND JUDGE PUBLICLY ADMONISHED.**

Thomas J. Miller, Attorney General, Kevin Cmelik and Grant K. Dugdale, Assistant Attorneys General, for complainant.

Gregory M. Lederer of Lederer Weston Craig PLC, Cedar Rapids, for respondent.

**WIGGINS, Justice.**

The Iowa Commission on Judicial Qualifications filed an application for discipline of a judicial officer recommending this court publicly reprimand a district court judge. *See* Iowa Code § 602.2106 (2015). Because we conclude the judge violated the Iowa Code of Judicial Conduct, we grant the application for judicial discipline. Rather than publicly reprimand the judge, however, we publicly admonish the judge.

### I. Scope of Review.

When the Iowa Commission on Judicial Qualifications files an application with our court to discipline a judicial officer, we conduct an equitable proceeding to review the application. *See In re Inquiry Concerning Stigler*, 607 N.W.2d 699, 701 (Iowa 2000); *see also* Iowa Code § 602.2106(1). We review findings and recommendations by the Commission concerning the discipline of a judicial officer de novo. *In re Krull*, 860 N.W.2d 38, 43 (Iowa 2015); *see* Iowa R. App. P. 6.907. Accordingly, we give respectful consideration to but are not bound by its recommendations and findings. *Krull*, 860 N.W.2d at 43. An ethical violation must be established by a convincing preponderance of the evidence. *In re Block*, 816 N.W.2d 362, 364 (Iowa 2012); *Stigler*, 607 N.W.2d at 705 (Iowa 2000).

### II. Factual Findings.

On our de novo review, we find the facts as follows. The Honorable Mary E. Howes is a district court judge in the Seventh Judicial District of Iowa. Judge Howes has not been disciplined in the past and has dedicated most of her professional career to public service. Prior to 1993, she served for seven years as an assistant county attorney in Scott County. From 1993 to 2000, she served as a magistrate in Scott County.

From 2000 to 2006, she served as a district associate judge in the seventh judicial district. She has served as a district court judge in the seventh judicial district since September 2006.

Judge Howes petitioned for dissolution of her marriage to her husband, Jack Henderkott, in June 2011. Maria Pauly represented Judge Howes in the dissolution action, and Chad Kepros of Bray & Klockau, P.L.C. represented Mr. Henderkott. The district court approved the parties' settlement agreement and entered a dissolution decree incorporating that agreement in May 2012.

On April 16, 2013, Mr. Henderkott sent Judge Howes an email indicating the Internal Revenue Service had deducted $3192 from his 2012 income tax return because she did not claim income she received from liquidating an individual retirement account on the couple's 2010 joint income tax return. Mr. Henderkott claimed he was entitled to reimbursement in the full amount of the deduction per the terms of the settlement agreement.

On May 2, Judge Howes responded by letter to Mr. Henderkott and offered to reimburse half the amount deducted from his 2012 tax return because she and Mr. Henderkott had filed a joint income tax return in 2010. Judge Howes's letter stated she had discussed the issue with her attorney, whom she identified as Ms. Pauly. It also indicated she was mailing a copy of the letter to "Attorney Maria Pauly." Judge Howes enclosed two postdated checks for $798 each along with the letter.

On May 17, Mr. Kepros sent a letter regarding the tax issue to Ms. Pauly. The letter advised Ms. Pauly that the settlement agreement incorporated into the dissolution decree obligated Judge Howes to reimburse the entire deduction. It also acknowledged the letter Judge Howes had sent to Mr. Henderkott.

Ms. Pauly delivered a copy of the letter she received from Mr. Kepros to Judge Howes, and the two spoke in person about it at the courthouse. Judge Howes advised Ms. Pauly she believed her payment of half the amount deducted from Mr. Henderkott's tax return satisfied her obligations under the dissolution decree.

Ms. Pauly responded to the letter from Mr. Kepros on behalf of Judge Howes on May 22. In the letter, Ms. Pauly indicated she had spoken to Judge Howes, whom she referred to as her client. She also reiterated Judge Howes's position that her payment of half the amount deducted from Mr. Henderkott's 2012 tax return satisfied her obligations under the decree because she and Mr. Henderkott had filed a joint income tax return in 2010. In closing, the letter stated, "If you need anything further, please contact me."

Mr. Henderkott eventually cashed the two checks Judge Howes had enclosed along with her response to his letter. After Ms. Pauly sent the May 22 letter, Judge Howes never attempted to contact Mr. Henderkott to confirm the tax dispute had been resolved. Rather, during the two months that followed, neither Judge Howes nor Ms. Pauly heard from either Mr. Henderkott or Mr. Kepros. On July 31, however, Mr. Kepros sent another letter to Ms. Pauly indicating Mr. Henderkott was prepared to file a contempt action if Judge Howes did not reimburse the remaining amount deducted from his 2012 tax return.

On September 26, Daniel Bray, another attorney at Bray & Klockau, sent Ms. Pauly a letter informing her that he had taken over representation of Mr. Henderkott. Thereafter, Ms. Pauly began corresponding with Mr. Bray about the tax dispute. However, Ms. Pauly did not immediately inform Judge Howes she had received the letter from Mr. Bray.

On October 15, Mr. Henderkott filed an application for a finding of contempt alleging Judge Howes's failure to reimburse the full amount deducted from his 2012 tax return constituted a willful violation of the dissolution decree incorporating the settlement agreement. On October 22, before the hearing to show cause had been set on the application, Ms. Pauly sent Mr. Bray a letter stating Judge Howes would reimburse Mr. Henderkott the remaining amount withheld from his 2012 tax return. Consequently, Mr. Henderkott dismissed the contempt action. Ms. Pauly provided her legal services to Judge Howes free of charge.

During the lull in correspondence concerning the postdissolution tax dispute with her ex-husband, Judge Howes was involved in another dissolution dispute in her official capacity as a judge. In that case, Ms. Pauly represented petitioner Farrakh Khawaja in seeking dissolution of his marriage to his wife, Shafaq Jadoon. The petition for dissolution of marriage Ms. Pauly filed on behalf of Mr. Khawaja indicated the couple had one child and requested the district court to grant joint legal custody to both parties and primary physical care to Ms. Jadoon with liberal visitation for Mr. Khawaja. With the consent of Mr. Khawaja, Ms. Jadoon resided in Pakistan, though the petition inaccurately stated that she resided in Oak Brook, Illinois.

The child, who had been residing in Pakistan with Ms. Jadoon, stayed in the Quad Cities with Mr. Khawaja during the summer of 2013. During the visit, Mr. Khawaja came to believe that Ms. Jadoon was abusing the child and confronted her with his concerns. Eventually, Mr. Khawaja asked Ms. Pauly to file an amended petition requesting the district court to award him primary physical care of the child, which she did on July 24.

On the same day Ms. Pauly filed the amended petition, Ms. Jadoon informed Mr. Khawaja that she was in the area and intended to retrieve the child and return to Pakistan. Mr. Khawaja learned from the employees at the summer program the child was attending that they were obligated to release the child to Ms. Jadoon if she arrived there to pick him up. Consequently, Ms. Pauly prepared an application for a temporary injunction and a supporting affidavit on behalf of Mr. Khawaja seeking to restrain Ms. Jadoon from removing the child to Pakistan. The application alleged Ms. Jadoon had assaulted the child and threatened to remove the child to Pakistan without Mr. Khawaja's consent.

The following morning, the Honorable Mark Cleve, another district court judge in the seventh judicial district, was the designated assignment judge. As the designated assignment judge, Judge Cleve was scheduled to hear unscheduled matters during two "order hours" from 8:30 a.m. to 9:00 a.m. and 1:30 p.m. to 2:00 p.m. Between the order hours, Judge Cleve was scheduled to hear motions from 10:00 a.m. to noon in fifteen-minute intervals.

By the time Ms. Pauly arrived at the courthouse on July 25 to present the application for a temporary injunction to a judge, the morning order hour was over and Judge Cleve was busy hearing scheduled motions. Because the judges at the Scott County Courthouse adhere to an open-door policy, Ms. Pauly proceeded to look for a different judge to grant the temporary injunction. She soon discovered that every judge in the courthouse that day had a full schedule, except for Judge Howes, who had unexpectedly become available when the case she was to hear that day had fallen off her schedule.

Ms. Pauly told Judge Howes her client had an emergency and asked if she would be willing to consider the application for a temporary

injunction. Judge Howes then reviewed the application and signed an order temporarily enjoining both Ms. Jadoon and Mr. Khawaja from removing their child from the area for thirty days and temporarily enjoining Ms. Jadoon from removing the child from Mr. Khawaja.

After Judge Howes granted the temporary injunction, Ms. Jadoon retained Lori Klockau and Daniel Bray of Bray & Klockau to represent her. Shortly after Ms. Klockau learned that Judge Howes had signed the order granting the temporary injunction against Ms. Jadoon, she learned from her secretary that another attorney at Bray & Klockau had recently written a letter to Ms. Pauly regarding the tax dispute between Judge Howes and Mr. Henderkott. Because Ms. Klockau knew the tax dispute was ongoing, she became concerned and shared her concerns with Ms. Jadoon, who became distraught upon hearing that the same lawyer who was representing her husband was representing the very judge who had signed the order granting the temporary injunction.

On October 7, Ms. Klockau and Mr. Bray filed a complaint regarding Judge Howes with the Iowa Commission on Judicial Qualifications. On December 13, the Commission sent Judge Howes a letter notifying her it had received the complaint and asking her to provide it with a written explanation of her conduct and the circumstances that led her to sign the order granting the temporary injunction on July 25. The letter noted the Commission was especially interested to learn whether Ms. Pauly was in fact representing Judge Howes in her postdissolution tax dispute on the date Judge Howes signed the order.

On January 6, 2014, Judge Howes responded by letter to the Commission. In the letter, Judge Howes acknowledged Ms. Pauly had represented her in her dissolution action and noted she had advised

court administrative staff that Ms. Pauly could not appear before her while her dissolution was ongoing. She also informed the Commission she had not decided any matter in which Ms. Pauly represented a party for approximately one year following entry of the dissolution decree.

With respect to the question of whether Ms. Pauly represented her on July 25, Judge Howes advised the Commission she had not contacted or hired Ms. Pauly upon being asked to reimburse the funds withheld from Mr. Henderkott's tax return in April 2013. Rather, she indicated Ms. Pauly had called her in May 2013 upon receiving the letter from Mr. Kepros and she had informed Ms. Pauly the matter was resolved because she had already reimbursed half the withheld funds. Judge Howes asserted that after Ms. Pauly had informed Mr. Kepros to this effect, both she and Ms. Pauly had considered the matter to be resolved, as neither heard anything more about it.

Judge Howes asserted she had reasonably believed Ms. Pauly was not representing her in any dispute when she signed the order granting the temporary injunction on July 25, as she had not believed she had an unresolved dispute with Mr. Henderkott on that date. Moreover, Judge Howes assured the Commission she would not have signed the order if she had believed Ms. Pauly represented her at that time. Though she forthrightly acknowledged another attorney, Dennis Jasper, had appeared before her in the past despite having previously represented her in another matter, she indicated she now realized that out of an abundance of caution, Ms. Pauly should not appear before her in the future. In closing, Judge Howes acknowledged the importance of impartiality and stated she would never intentionally violate any ethical rule or create an appearance of impropriety.

On January 15, Judge Howes sent a second letter to the Commission to correct a typographical error appearing in her January 6 letter.[1] In that letter, Judge Howes did not address the substance of the complaint against her or the circumstances that led her to sign the order granting the temporary injunction.

On September 25, the Commission issued a notice informing Judge Howes it had charged her with violating rules 51:1.2 and 51:2.11(A) of the Iowa Code of Judicial Conduct because she failed to disqualify herself from a judicial proceeding involving Ms. Pauly.

On March 30, 2015, the Commission issued a second notice informing Judge Howes it had charged her with additional violations of the Iowa Code of Judicial Conduct. The notice stated the Commission had charged Judge Howes with violations of rules 51:1.1, 51:1.2, and 51:2.16(A) because statements in her letter to the Commission contradicted statements in her correspondence with Mr. Henderkott. The notice further stated the Commission had charged Judge Howes with violations of rules 51:1.1, 51:1.2, and 51:3.13(A) because she accepted free legal services from Ms. Pauly and Mr. Jasper.

During a hearing before the Commission, Judge Howes and Ms. Pauly acknowledged they had an attorney–client relationship when Ms. Pauly sent the May 22 letter. But Judge Howes and Ms. Pauly testified they had not believed the tax dispute was ongoing on July 25 when Judge Howes signed the order granting the temporary injunction. In addition, Judge Howes testified that both Ms. Pauly and Mr. Jasper refused her offers for payment for their legal services, but she

---

[1]Judge Howes's first letter to the Commission mistakenly indicated she had served as an associate district judge from 1994 to 2000. She actually served as an associate district judge from 1993 to 2000.

acknowledged she accepted their services without entering into fee agreements in advance. Ms. Pauly confirmed she refused to accept payment for her services from Judge Howes, but she noted that Judge Howes paid the filing fee associated with filing her dissolution petition.

Following the hearing, the Commission filed an application for discipline of Judge Howes with this court. *See* Iowa Code § 602.2106. In the application, the Commission concluded Judge Howes violated rules 51:1.1, 51:1.2, and 51:2.11(A) as well as canons 1 and 2 of the Iowa Code of Judicial Conduct when she failed to disqualify herself from deciding whether to grant the temporary injunction. The Commission also concluded Judge Howes violated rules 51:1.1, 51:1.2, and 51:3.13(A) as well as canons 1 and 3 of the Iowa Code of Judicial Conduct when she accepted gifts of free legal services from Ms. Pauly and Mr. Jasper. However, the Commission concluded Judge Howes did not violate rules 51:1.1, 51:1.2, or 51:2.16(A) by failing to be candid and honest in her letter of explanation regarding the circumstances that led her to sign the order granting the temporary injunction. The Commission recommended this court publicly reprimand Judge Howes for her conduct.

### III. Discussion and Analysis.

The Iowa Code of Judicial Conduct contains four canons, each of which states "overarching principles of judicial ethics that all judges must observe." Iowa Code of Judicial Conduct, Scope [2]. Following each canon is a series of rules that more specifically defines the conduct the canon prohibits. *Block*, 816 N.W.2d at 364. Comments accompanying those rules serve two important purposes. Iowa Code of Judicial Conduct, Scope [3]. "First, they provide guidance regarding the purpose, meaning, and proper application of the rules," including explanatory examples of permitted and prohibited conduct. *Id.* Second,

they "identify aspirational goals for judges." *Id.* at [4]. "Comments neither add to nor subtract from the binding obligations set forth in the rules." *Id.* at [3].

The Commission charged Judge Howes with violating rules contained in canons 1, 2, and 3 of the Iowa Code of Judicial Conduct, including rules 51:1.1, 51:1.2, 51:2.11(A), 51:2.16(A), and 51:3.13(A). We will consider each charged violation separately.

**A.   Rule 51:2.11(A) and Canon 2.**   We first consider whether Judge Howes violated rule 51:2.11(A) and canon 2 of the Iowa Code of Judicial Conduct by failing to disqualify herself from deciding a matter in which Ms. Pauly represented a party.

1. *Governing legal principles.*  Canon 2 of the Iowa Code of Judicial Conduct provides that "a judge shall perform the duties of judicial office impartially, competently, and diligently." *Id.*, Canon 2. Rule 51:2.11 governs circumstances under which canon 2 requires a judge to recuse himself or herself from a judicial proceeding.  In relevant part, it provides,

> (A) A judge shall disqualify himself or herself in *any proceeding in which the judge's impartiality might reasonably be questioned*, including *but not limited to* the following circumstances:
>
> (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer . . . .
>
> . . . .
>
> (C) A judge subject to disqualification under this rule, other than for bias or prejudice under paragraph (A)(1), may disclose on the record the basis of the judge's disqualification and may ask the parties and their lawyers to consider, outside the presence of the judge and court personnel, whether to waive disqualification. *If, following the disclosure, the parties and lawyers agree*, without participation by the judge or court personnel, *that the judge*

*should not be disqualified, the judge may participate in the proceeding . . . .*

*Id.* r. 51:2.11 (emphasis added). The Iowa Code of Judicial Conduct defines "impartiality" as the "absence of bias or prejudice in favor of, or against, particular parties . . . as well as maintenance of an open mind in considering issues." *Id.,* Terminology.

Under rule 51:2.11(A), judicial disqualification is ordinarily mandatory, rather than discretionary, when the impartiality of a judge might reasonably be questioned if he or she were to decide a particular matter. The rule's mandatory nature is clear from its language, which provides a judge "shall disqualify himself or herself" from deciding a matter whenever his or her impartiality might reasonably be questioned. *Id.* r. 51:2.11(A); *see, e.g., State v. Luckett,* 387 N.W.2d 298, 301 (Iowa 1986). The mandatory nature of the rule is also evident from its structure, as the rule includes an expressly nonexclusive list of circumstances in which a judge's impartiality might reasonably be questioned. *See* Iowa Code of Judicial Conduct R. 51:2.11(A). A comment clarifies that the "obligation not to hear or decide matters in which disqualification is required applies regardless of whether a motion to disqualify is filed." *Id.* r. 51:2.11 cmt. 2.

However, a comment to rule 51:2.11 encourages a judge contemplating whether the rule mandates recusal because his or her impartiality might reasonably be questioned to "disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification, even if the judge believes there is no basis for disqualification." *Id.* r. 51:2.11 cmt. 5. When a judge makes such disclosures and the parties waive disqualification, the judge may proceed to hear the matter

regardless of whether a basis for disqualification actually existed, unless the basis for disqualification was "personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." *Id.* r. 51:2.11(A)(1), (C). Accordingly, in practice rule 51:2.11 does not require a judge to determine whether disqualification is actually required because his or her impartiality might reasonably be questioned so long as the judge discloses any possible basis for disqualification to the parties before hearing a matter and obtains their consent to proceed.[2]

Another comment to rule 51:2.11 provides that necessity may override the disqualification requirement under limited circumstances. *Id.* r. 51:2.11 cmt. 3. More specifically, it provides,

> The rule of necessity may override the rule of disqualification. For example, a judge might be required to participate in judicial review of a judicial salary statute, or might be the only judge available in a matter requiring immediate judicial action, such as a hearing on probable cause or a temporary restraining order. In matters that require immediate action, the judge must disclose on the record the basis for possible disqualification and make reasonable efforts to transfer the matter to another judge as soon as practicable.

*Id.* As contemplated in this comment, the "rule of necessity" eliminates the disqualification requirement if no judge lacking the same basis for disqualification exists or if a matter requires immediate action and no judge lacking some basis for disqualification is available.

Although disqualification is generally mandatory under rule 51:2.11(A)(1) when a judge has a personal bias or prejudice in favor of, or against, a party or a party's lawyer, rule 51:2.11 does not presume actual

---

[2]When a party does not agree to waive disqualification and moves for disqualification, however, the judge must decide whether disqualification is required.

personal bias or prejudice on the part of a judge merely because a party's lawyer currently represents or previously represented the judge in an unrelated matter. Rather, disqualification is required based on an existing or former attorney–client relationship between the judge and a party's lawyer only when "the judge's impartiality might reasonably be questioned" due to that relationship. *See id.* r. 51:2.11(A).

The standard for determining whether judicial recusal is required under rule 51:2.11(A) because "the judge's impartiality might reasonably be questioned" is objective, not subjective. *State v. Mann*, 512 N.W.2d 528, 532 (Iowa 1994) (addressing nearly identical language in the prior version of rule 51:2.11). In other words, the test is not whether the judge *actually* questions his or her own impartiality, "but whether a reasonable person would question it." *Krull*, 860 N.W.2d at 44 (quoting *Mann*, 512 N.W.2d at 532). Proving scienter is not necessary to establish a violation of the rule. *Mann*, 512 N.W.2d at 532. Rather, the appropriate inquiry is whether a reasonable person with knowledge of all the facts might have a reasonable basis for questioning the judge's impartiality such that the judge deciding a matter would create an appearance of impropriety. *See id.*

In considering whether a judge has violated rule 51:2.11(A), "drawing all inferences favorable to the honesty and care of the judge whose conduct has been questioned could collapse the appearance of impropriety standard . . . into a demand for proof of actual impropriety." *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, 970 A.2d 656, 669 (Conn. 2009) (quoting *United States v. Jordan*, 49 F.3d 152, 157 (5th Cir. 1995)) (describing the appropriate standard under a nearly identical rule). Recusal is required under rule 51:2.11(A) when a reasonable person might reasonably doubt the judge's impartiality because the rule

anticipates "that people who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges." *Mann*, 512 N.W.2d at 532 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864–65, 108 S. Ct. 2194, 2205, 100 L. Ed. 2d 855, 875 (1988)). Thus, rule 51:2.11(A) operates "to promote public confidence in the integrity of the judicial process." *Id.* at 533.

There can be no serious doubt a reasonable person who knows an attorney appearing before a judge currently represents the judge in a personal matter would have a reasonable basis for questioning the judge's impartiality.[3] *See, e.g.*, *Berry v. Berry*, 765 So. 2d 855, 858 (Fla. Dist. Ct. App. 2000). "If the attorney in this instance represents the judge in a pending action, the other party may question the judge's impartiality, even if the resolution of the case appears fair to the public in general." Charles Gardener Geyh, et al., *Judicial Conduct and Ethics* § 4.14[3], at 4-60 (5th ed. 2013).

Nonetheless, "if an attorney appearing before the judge represented the judge only in the past, the concerns about partiality are not so acute." *Id.* at 4-61. Thus, the question of whether a reasonable person might perceive a reasonable basis for questioning a judge's impartiality becomes a closer one when an attorney appearing before the judge represented the judge only in the past.

Like the Model Code of Judicial Conduct, the Iowa Code of Judicial Conduct prescribes no specific time period during which a judge must disqualify himself or herself from deciding a matter based solely on his or

---

[3]In this case, Judge Howes decided a matter in which a party was represented by an attorney who currently or previously represented her in a personal matter. We need not decide whether or under what circumstances disqualification is required under rule 51:2.11(A) based on an attorney's representation of a judge in a matter concerning the judge's official acts.

her former attorney–client relationship with an attorney who presently represents a party appearing before the judge in an unrelated matter. *Compare* Model Code of Judicial Conduct R. 2.11(A) (Am. Bar Ass'n 2011), *with* Iowa Code of Judicial Conduct R. 51:2.11(A). Nor do existing authorities discussing the circumstances in which a judge must disqualify himself or herself based on the judge's former representation by a party's attorney reveal a clear consensus. *See Powell v. Anderson*, 660 N.W.2d 107, 117 & n.8 (Minn. 2003). Courts generally agree that once significant time has passed since the conclusion of a former attorney–client relationship between a judge and a party's attorney, any appearance of bias or impropriety arising therefrom is insufficient to warrant disqualification. *See, e.g., Noland v. Noland,* 932 S.W.2d 341, 342–43 (Ark. 1996) (three years); *In re Disqualification of Park*, 28 N.E.3d 56, 58 (Ohio 2014) (sixteen years); *Young v. Young*, 971 S.W.2d 386, 390 (Tenn. Ct. App. 1997) (ten years). In contrast, most courts and judicial ethics commissions to consider the disqualification issue in the context of a judge's recent representation by a party's attorney appear to have adopted one of two approaches to determining whether a reasonable person would conclude the prior representation might constitute a reasonable basis for questioning the judge's impartiality.

Under the first approach, the question of whether judicial disqualification is required based on a former attorney–client relationship between a judge and an attorney representing a party in an unrelated matter turns primarily on how much time has passed since the relationship ended. Among commissions adopting this approach, however, disagreement exists as to how much time must pass before a former attorney–client relationship no longer constitutes a reasonable basis for questioning the judge's impartiality. *See, e.g.,* N.Y. Advisory

Comm. on Judicial Ethics, Joint Op. 08-171/08-174 (2009), www.nycourts.gov/ip/judicialethics/opinions/08-171and%2008-174.htm (two years); Utah Judicial Conduct Comm., Joint Op. 00-4 (2000), www.utcourts.gov/resources/ethadv/ethics_opinions/2000/00-4.htm (six months). Moreover, some commissions endorse a variant of this approach whereby a judge must consider whether the circumstances make continued disqualification appropriate after the requisite time during which disqualification is required has passed. *See, e.g.*, Colo. Judicial Ethics Advisory Bd., Advisory Op. 2006-05 (2006), www.courts.state.co.us/userfiles/File/Court_Probation/Supreme_Court/ Committees/Judicial_Ethics_Advisory_Board/opinion2006-05_1.pdf (one year unless circumstances such as the length, nature, extent, cost, and recency of the representation make continued disqualification appropriate); N.C. Judicial Standards Comm'n, Formal Op. 2011-02 (2011), www.aoc.state.nc.us/www/public/coa/jsc/formaladvisoryopini ons/11-02.pdf (six months unless circumstances such as the length, nature, extent, cost, and recency of the representation make continued disqualification appropriate).

Under a second approach recently adopted by the supreme courts of Minnesota and Mississippi, a reviewing court should generally weigh four factors to determine whether a former attorney–client relationship between a judge and an attorney requires the judge to disqualify himself or herself. *Powell,* 660 N.W.2d at 118; *Washington Mut. Fin. Grp., LLC v. Blackmon,* 925 So. 2d 780, 791 (Miss. 2004). Under this approach, a reviewing court should determine whether recusal was required by considering (1) the extent of the attorney–client relationship; (2) the nature of the representation; (3) the frequency, volume, and quality of the contacts between the judge and the attorney; and (4) special

circumstances that might enhance or diminish the likelihood that the judge deciding a matter in which a party is represented by the attorney might reasonably create an appearance of impropriety from the perspective of the public. *Powell*, 660 N.W.2d at 118; *Blackmon*, 925 So. 2d at 791.

Similarly, the American Bar Association Standing Committee on Ethics and Professional Responsibility advises that several factors influence whether judicial disqualification is required based on an attorney's former representation of a judge because "a reasonable person would believe, in light of the time that had elapsed, that the judge's fairness and impartiality could still be questioned." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 07-449 (2007). According to the committee, these factors include (1) whether the matter was consequential or relatively inconsequential; (2) the size of the fee the judge paid to the attorney; (3) whether the representation concerned an isolated matter or several matters over time; and (4) whether the representation concerned a matter that was highly confidential or highly publicized. *Id.*

In 1989, the Iowa Supreme Court Board of Professional Ethics and Conduct addressed this issue in an advisory opinion intended for the benefit of practicing attorneys within the state. *See* Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct, Op. 90-47 (1991). The opinion advised an attorney may not properly appear before a judge for a period of one year following the performance of "actual legal activities" on the judge's behalf by the attorney or the attorney's firm. *Id.*

Nevertheless, this court has never determined the precise circumstances under which rule 51:2.11(A) requires a judge to disqualify himself or herself in a matter in which an attorney with whom the judge

once had an attorney–client relationship represents a party. We conclude that we need not do so today. Under our existing precedents interpreting the language in rule 51:2.11(A), it is clear that a judge who fails to disqualify himself or herself from a proceeding in which an attorney who recently represented the judge in a personal matter represents a party violates rule 51:2.11(A) unless the judge complies with rule 51:2.11(C) by disclosing the relevant facts to and obtaining a disqualification waiver from both parties in advance.[4] *See Bride v. Heckart*, 556 N.W.2d 449, 455 (Iowa 1996) (relying on a prior interpretation of the language in the prior version of rule 51:2.11(A)); *Forsmark v. State*, 349 N.W.2d 763, 767–69 (Iowa 1984) (interpreting language in the prior version of rule 51:2.11(A)). Indeed, we have long expected trial judges to follow the procedures contained in rule 51:2.11(C) and comment 5 before deciding a matter when a possible basis for recusal exists in order to permit the parties to determine whether to request disqualification.

In *Forsmark*, we considered an appeal from a district court judgment denying a motion to vacate a judgment in a medical-negligence action.[5] 349 N.W.2d at 765. The plaintiffs had filed the motion to vacate the judgment upon discovering the estate of the trial judge's brother had a pending wrongful-death action against the plaintiffs' chief medical witness. *Id.* The trial judge found in the defendant's favor without ever

---

[4]Of course, trial judges frequently recuse themselves from proceedings without notifying the parties of their basis for doing so upon being designated by court administration to hear a case.

[5]Although not relevant for purposes of our analysis, we note the trial judge who failed to disclose the possible basis for his disqualification during the trial recused himself from deciding the motion to vacate the judgment. *Forsmark*, 349 N.W.2d at 765.

disclosing this fact to the plaintiffs. *Id.* The plaintiffs asserted the trial judge's failure to recuse himself constituted an irregularity in the obtaining of the judgment that amounted to a basis for vacating it under our rules of civil procedure. *Id.*

We determined it was neither practical nor necessary to determine whether the trial judge was required to recuse himself in order to decide the appeal. *Id.* at 768. In doing so, we reasoned,

> No meaningful way existed after trial to reconstruct how the issue would have been resolved before trial. The judge failed before trial to disclose facts creating a substantial and serious issue concerning his duty to disqualify himself. As a result plaintiffs were denied an opportunity to raise the issue or be heard on it.

*Id.* Accordingly, the precise question before us was not whether recusal was in fact required, though we acknowledged the judge "should have known that a party in plaintiffs' position might question his impartiality." *Id.*

Ultimately, we concluded the trial judge's failure to disclose the possible basis for disqualification constituted an irregularity in obtaining the judgment within the meaning of our rules of civil procedure because it denied plaintiffs the opportunity to raise or be heard on the potential basis for disqualification. *Id.* at 767–68. Accordingly, because we determined the plaintiffs presented sufficient evidence to generate an issue for the trier of fact, we vacated the district court order denying their motion to vacate the judgment. *Id.* at 768–69.

Years later, in *Bride*, we considered another appeal based on a trial judge's failure to disclose a basis for disqualification to the parties appearing before him. 556 N.W.2d at 455. Specifically, the trial judge had failed to disclose that less than two years prior to the start of the

trial he was represented by the same law firm that represented a party appearing before him. *Id.* Relying on language in the prior version of rule 51:2.11(A) nearly identical to that appearing in the current version of the rule, we concluded the trial judge's failure to disclose the basis for disqualification was error. *Id.* In doing so, we reasoned the trial judge's mere nondisclosure constituted error because it deprived the party before him an opportunity to make a timely request for disqualification. *Id.* Thus, based in part on the trial judge's failure to disclose his former attorney–client relationship with a party's attorney, we reversed a district court decision denying a motion to vacate the judgment. *Id.*

Neither of these cases required us to decide whether judicial discipline was appropriate. *See Bride*, 556 N.W.2d at 455 (appeal based on a trial judge's failure to disclose a possible basis for disqualification); *Forsmark*, 349 N.W.2d at 767–69 (appeal based on a trial judge's failure to disqualify himself). Yet, in *Bride*, we implicitly acknowledged a reasonable person might question the impartiality of a judge who presides over a proceeding in which an attorney who recently represented the judge in a personal matter appears without disclosing that fact to the parties. *See Bride*, 556 N.W.2d at 455 ("The judge should have known that, based on his recent, prior representation by defense counsel's law firm, a party in plaintiff's position might question his impartiality.").

When a basis for disqualification exists because a reasonable person knowing all the facts might reasonably question a trial judge's impartiality, the judge must either disqualify himself or herself pursuant to rule 51:2.11(A) or disclose the relevant facts and obtain a waiver of the

disqualification requirement from the parties under rule 51:2.11(C).[6] If the judge wishes to hear a matter despite the existence of a possible basis for disqualification, the judge should "disclose on the record information that the judge believes the parties or their lawyers might reasonably consider relevant to a possible motion for disqualification" in order to assure the parties have an opportunity to raise and be heard on the potential basis for disqualification. Iowa Code of Judicial Conduct R. 51:2.11(C) & cmt. 5; *see Bride*, 556 N.W.2d at 455; *Forsmark*, 349 N.W.2d at 767–68. When it is debatable whether a basis for disqualification actually exists, the best practice is for the judge to disclose all the relevant facts to the parties "even if the judge believes there is no basis for disqualification." Iowa Code of Judicial Conduct R. 51:2.11 cmt. 5. If the parties thereafter waive disqualification, the judge may then decide the matter. *Id.* r. 51:2.11(C).

---

[6]We note the section of the Iowa Code addressing the circumstances under which a judicial officer is disqualified also emphasizes the importance of disclosure in this context. In relevant part, the Code provides,

> 1. A judicial officer is disqualified from acting in a proceeding, except upon the consent of all of the parties, if any of the following circumstances exists:

> *a.* The judicial officer has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

> . . . .

> 2. A judicial officer shall disclose to all parties in a proceeding any existing circumstances in subsection 1, paragraphs "*a*" through "*d*", before the parties consent to the judicial officer's presiding in the proceeding.

Iowa Code § 602.1606(1)(*a*), (2). Unlike rule 51:2.11(A) of the Iowa Code of Judicial Conduct, Iowa Code section 602.1606(1) does not mandate judicial disqualification merely because a judge's impartiality might reasonably be questioned. Rather, section 602.1606(1) provides an exclusive list of circumstances under which disqualification or disclosure and waiver is required. *See* Iowa Code § 602.1606(1).

2. *Application of legal principles.* Notably, Judge Howes recognized she could not preside over any matter in which an attorney who was currently representing her represented a party. Judge Howes and Ms. Pauly testified that no attorney–client relationship existed between them on July 25 when Judge Howes signed the order granting the temporary injunction Ms. Pauly sought on behalf of Mr. Khawaja.

Despite this testimony, the Commission concluded Judge Howes was obligated to disqualify herself from any case in which Ms. Pauly was representing a party when she signed the order even if Ms. Pauly was *not* currently representing her. More precisely, the Commission determined that under either approach described above, Judge Howes was obligated to disqualify herself from deciding whether to grant the temporary injunction because Judge Howes and Ms. Pauly admitted they had an attorney–client relationship in May 2013.

"Generally, in a civil action, once the period for motions and appeals expires, the lawyer's representation of his or her client ends." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 814 N.W.2d 532, 538 (Iowa 2012); *see* 16 Gregory C. Sisk & Mark S. Cady, *Iowa Practice Series: Lawyer and Judicial Ethics* § 5:3(e), at 181 (2015) ("If the lawyer has been retained to represent the client with respect to a specific matter, the attorney–client relationship ends with the completion of legal services for that matter, and the lawyer has no ongoing responsibility to address other legal concerns of the client."). Accordingly, we recognize Judge Howes and Ms. Pauly did not have an ongoing attorney–client relationship extending from the entry of the dissolution decree in May 2012 to the date in May 2013 on which Ms. Pauly sent the letter to Mr. Kepros.

Nonetheless, Judge Howes does not dispute that Ms. Pauly represented her in two highly confidential personal matters within the two years preceding the date on which she signed the ex parte order granting the temporary injunction that Ms. Pauly sought on behalf of her client. Nor does Judge Howes dispute that she and Ms. Pauly shared an attorney–client relationship when Ms. Pauly sent the letter to Mr. Kepros on her behalf just two months before she signed that order. Furthermore, Judge Howes does not deny that she did not pay for the legal services Ms. Pauly provided.

Given these facts, we agree with the Commission that it is unnecessary to decide the precise standard that governs determinations as to whether disqualification is required under rule 51:2.11(A) based on a former attorney–client relationship between a judge and an attorney appearing before the judge in this case. Instead, we conclude a reasonable person with knowledge of all the facts on July 25 might have had a reasonable basis for questioning Judge Howes's impartiality when she signed the ex parte order even if Judge Howes did not have an ongoing attorney–client relationship with Ms. Pauly on that date.[7] *See Bride*, 556 N.W.2d at 455; *see also Mann*, 512 N.W.2d at 532. When an attorney who contemporaneously represents or recently represented a judge in a personal matter appears before the judge in another case and the judge does not disclose that fact to the parties, the judge's impartiality might reasonably be questioned.

Accordingly, unless Judge Howes disclosed all the facts relevant to her representation by Ms. Pauly to the parties and obtained a waiver of

---

[7]Under these facts and our caselaw, we find it unnecessary to determine whether the attorney–client relationship Judge Howes and Ms. Pauly shared in May 2013 was ongoing when Judge Howes signed the ex parte order.

the disqualification requirement under rule 51:2.11(C), she was required to disqualify herself from deciding whether to grant the application for a temporary injunction under rule 51:2.11(A) so long as the rule of necessity did not apply. Under our caselaw interpreting the language of rule 51:2.11, Judge Howes was required to disclose to the parties every relevant fact concerning her representation by Ms. Pauly before signing the order, including the fact that she did not pay for the legal services Ms. Pauly provided, in order to assure the parties received an opportunity to file and be heard on a motion seeking her disqualification unless she actually disqualified herself. *See Bride*, 556 N.W.2d at 455; *see also Forsmark*, 349 N.W.2d at 768–69.

Thus, because Judge Howes signed the order granting the temporary injunction ex parte, we agree with the Commission that her inability to disclose the facts concerning her representation by Ms. Pauly to Ms. Jadoon or Ms. Jadoon's counsel obligated her to recuse herself unless the rule of necessity excused her from the sua sponte disqualification requirement.

3. *Governing legal principles concerning the rule of necessity.* The rule of necessity constitutes an exception to the general rule obligating a judge to disqualify himself or herself from any judicial proceeding in which his or her impartiality might reasonably be questioned. Iowa Code of Judicial Conduct R. 51:2.11 cmt. 3. Because the disqualification rule rests on sound public policy, the rule of necessity is strictly construed. *State ex rel. Brown v. Dietrick*, 444 S.E.2d 47, 55 (W. Va. 1994). Thus, although necessity may afford a judge who would otherwise be disqualified the power to hear a case, necessity extends such power only when the occasion truly requires.

Although the rule of necessity has its genesis in the common law, state and federal courts alike recognize its continued vitality in modern times. *United States v. Will*, 449 U.S. 200, 213, 101 S. Ct. 471, 480, 66 L. Ed. 2d 392, 405 (1980). The common law tradition has "long regarded the absence of an appropriate forum in which to resolve a legitimate case to be intolerable." *Bd. of Trs. of Pub. Emps' Ret. Fund v. Hill*, 472 N.E.2d 204, 206 (Ind. 1985). The rule of necessity thus reflects the longstanding principle that to deny an individual access to courts for the vindication of his or her rights constitutes a far more egregious wrong than to permit a judge to hear a matter in which he or she has some interest. *See Weinstock v. Holden*, 995 S.W.2d 408, 410 (Mo. 1999) (en banc) (per curiam).

When the matter to be decided affects the interests of every judge qualified to hear it, the rule of necessity clearly applies "without resort to further factual development." *State ex rel. Hash v. McGraw*, 376 S.E.2d 634, 639 (W. Va. 1988) (McGraw, J., noting his disqualification). The theory on which the rule rests when such circumstances arise is that "where all are disqualified, none are disqualified." *Ignacio v. Judges of U.S. Ct. of Appeals for Ninth Circuit*, 453 F.3d 1160, 1165 (9th Cir. 2006) (quoting *Pilla v. Am. Bar Ass'n.*, 542 F.2d 56, 59 (8th Cir. 1976)). Courts ordinarily invoke the rule of the necessity in such circumstances because disqualifying every judge with an interest in the matter to be decided would leave the parties with no court in which to resolve a dispute. *See, e.g., id.* (applying the rule because a litigant sued all the judges in a federal circuit); *Hill*, 472 N.E.2d at 206 (applying the rule to consider a challenge to a statutory amendment affecting judicial retirement benefits); *Weinstock*, 995 S.W.2d at 410 (applying the rule to consider a resolution affecting judicial pay). Similarly, the rule of necessity has

been invoked to prevent an attorney who represented every judge within a jurisdiction from having no court in which to practice. *See Reilly by Reilly v. Se. Pa. Transp. Auth.*, 489 A.2d 1291, 1295 (Pa. 1985).

The rule of necessity contemplated in comment 3 to rule 51:2.11(A) is broader than the common law rule in that it may also override the disqualification obligation of a judge who is "the only judge available in a matter requiring immediate judicial action" when certain conditions are met. Iowa Code of Judicial Conduct R. 51:2.11(A) cmt. 3. Nonetheless, the rule of necessity applies on this basis only when (1) the matter to be decided requires "immediate judicial action," (2) the judge is "the only judge available" to decide it, (3) the judge "disclose[s] on the record the basis for possible disqualification," and (4) the judge makes "reasonable efforts to transfer the matter to another judge as soon as practicable." *Id.*

A judge has an affirmative obligation to assure deciding a matter is in fact necessary before relying on the rule of necessity to excuse a duty of disqualification based on the unavailability of another judge. To establish necessity excused a disqualification requirement, a judge must show he or she made reasonable efforts to transfer the particular matter to which it applied to another judge "as soon as practicable." *Id.* It follows that when a judge learns it is practicable to transfer a matter from which he or she would ordinarily be disqualified to another judge *before* considering it, the rule of necessity does *not* permit the judge to consider it. Stated another way, a judge with a duty of disqualification can only show he or she was the only judge available to decide a matter requiring immediate attention when the evidence shows it was *not* practicable for the judge to transfer the matter to another judge before deciding it. Thus, under such circumstances, a judge must assess

whether any available options for transferring the matter to another judge satisfies the degree of urgency called for before relying on the rule of necessity.

4. *Application of the rule of necessity.* Judge Howes contends the rule of necessity excused her from any duty she had to disqualify herself from deciding whether to grant the temporary injunction. We agree with Judge Howes that an application for a temporary injunction is the sort of matter that *may* require immediate judicial attention.[8] But we conclude the circumstances existing when Judge Howes signed the ex parte order did not excuse her from disqualification based on necessity for two reasons.[9]

First, we are not persuaded that Judge Howes was the only judge available to consider the application for a temporary injunction. The record indicates at least six or seven of the eight district court judges with chambers in the Scott County Courthouse were present on the morning Ms. Pauly presented the ex parte application to Judge Howes. Judge Howes presented evidence revealing that every judge present in the courthouse when she signed the order granting the temporary injunction had a full morning according to the assignment schedule. However, we conclude this evidence, though relevant, was insufficient to conclude necessity excused her failure to disqualify herself from considering the ex parte application for the injunction.

---

[8]Because we decide necessity did not excuse Judge Howes from disqualification on other grounds, we do not address whether the application Ms. Pauly presented to her warranted a conclusion that the requisite degree of urgency existed.

[9]Similarly, because we conclude necessity did not excuse Judge Howes from disqualification on other grounds, we need not decide whether necessity may excuse a judge's duty of disqualification without advance disclosure of the basis for disqualification to the *party* not present in an ex parte proceeding permitted by law if disclosure is made *on the record* during that proceeding.

Ample testimony indicated the assignment schedule often included matters that had fallen off the schedule because they settled at the last minute. That was precisely the reason Judge Howes was available the morning she considered the application for a temporary injunction despite the assignment schedule indicating she would not be. Additionally, the evidence demonstrated the assignment judge was scheduled to hear motions in fifteen-minute intervals for the remainder of the morning following the morning order hour. Thus, the evidence unequivocally established not only that at least one judge present in the courthouse was *not* in the midst of a jury trial, but also that it would be possible to interrupt that judge to request that he consider an emergency matter within fifteen minutes. We are confident any judge who had been informed by Judge Howes or a court administrator that he or she was the only judge without a conflict available to consider an emergency application for a temporary injunction would have agreed to take five minutes to consider it.

Moreover, we note Judge Howes presented no evidence to suggest she attempted to verify she was the only judge available before considering the application for a temporary injunction. Because there were at least a half dozen judges in the courthouse that morning, it was not obvious that necessity permitted Judge Howes to consider the application despite her conflict, as might have been the case had she been the only judge in the courthouse. Yet the record reflects no evidence suggesting Ms. Pauly told Judge Howes she had attempted to present the application to the other judges in the courthouse. Nor does the record reveal any evidence suggesting Judge Howes asked Ms. Pauly if she had done so. In fact, the record reflects no evidence suggesting

Judge Howes consulted the assignment schedule or called the court administrator before considering the application.

Second, we are not persuaded that Judge Howes made reasonable efforts to transfer the matter to another judge or considered whether transfer was practicable under the circumstances before considering it. The record reveals no evidence suggesting Judge Howes attempted to assess whether transfer was practicable under the circumstances. There was no evidence suggesting Judge Howes investigated the degree of urgency called for by questioning Ms. Pauly.[10] Nor did the evidence suggest Judge Howes checked with the court administrator or the clerks in the chambers of any of the other judges before deciding to consider the application herself. During her testimony before the Commission, Judge Howes acknowledged that, given the nature of the application, it was immediately apparent to her that considering it would take mere minutes. Thus, in light of the many other judges present in the courthouse, Judge Howes had no basis for concluding transfer to another judge was wholly impracticable without some investigation. Under these circumstances, we conclude her failure to investigate and her failure to attempt to find another judge to consider the ex parte application fatally undermine her claim of necessity.

Our research has not uncovered a single case in which a judge successfully invoked the rule of necessity under similar circumstances. *See Huffman v. Ark. Judicial Discipline & Disability Comm'n*, 42 S.W.3d 386, 393 (Ark. 2001) (concluding there was no showing of necessity when it was unclear a party seeking a temporary restraining order could not

---

[10]For example, had Judge Howes questioned Ms. Pauly, she might have learned that Ms. Pauly prepared the application for a temporary injunction the night before yet arrived at the courthouse after the morning order hour had ended.

have waited "until another judge could be found" or been sent to the chambers of a judge on the bench in the same courthouse "to wait for him to take a recess or otherwise become available"). Unless necessity is evident from the circumstances, a judge may not invoke the rule of necessity to circumvent his or her duty of disqualification without first attempting to determine whether transfer was practicable under the circumstances.

The record in this case does not support a finding that necessity was evident from the circumstances existing when Judge Howes considered the application for a temporary injunction. Nor does the record support a finding that Judge Howes determined transfer of the matter to another judge was impracticable. Therefore, we conclude the rule of necessity did not excuse Judge Howes from the duty of disqualification that arose due to her attorney–client relationship with Ms. Pauly. Accordingly, we agree with the Commission that Judge Howes violated rule 51:2.11(A) and canon 2 of the Iowa Code of Judicial Conduct when she decided whether to grant the application for a temporary injunction Ms. Pauly presented to her on July 25, 2013.

**B. Rule 51:3.13(A) and Canon 3.** We next consider whether Judge Howes violated rule 51:3.13(A) and canon 3 of the Iowa Code of Judicial Conduct by failing to minimize the risk of conflict with her judicial obligations and accepting gifts of free legal services from Mr. Jasper and Ms. Pauly.

1. *Governing legal principles.* Canon 3 of the Iowa Code of Judicial Conduct provides that "a judge shall conduct the judge's personal and extrajudicial activities to minimize the risk of conflict with the obligations of judicial office." Because judges accepting gifts creates a risk of conflict with their judicial obligations, rule 51:3.13 limits the circumstances

under which a judge may accept a gift or thing of value from another person.

First, rule 51:3.13(A) sets forth two considerations a judge must take into account before accepting any gift or thing of value. It provides, "A judge . . . shall not accept or solicit any gift, loan, bequest, benefit, or other thing of value, if acceptance is prohibited by law or would appear to a reasonable person to undermine the judge's independence, integrity, or impartiality." Iowa Code of Judicial Conduct R. 51:3.13(A). Under this rule, a judge may not accept a gift or thing of value in violation of the state gift laws set forth in chapter 68B of the Iowa Code. *See* Iowa Code §§ 68B.2, .22, .23, .34. In addition, a judge may not accept a gift or thing of value when its acceptance would reasonably appear to undermine his or her independence, integrity, or impartiality. Iowa Code of Judicial Conduct R. 51:3.13(A).

Second, rule 51:3.13(B) sets forth an exclusive list of gifts and things of value a judge may accept from a "restricted donor." Any party or other person involved in a case pending before a judge qualifies as a "restricted donor." *See id.*, Terminology. Therefore, the rule identifies the only gifts or things of value a judge may accept from an individual involved in a pending case before him or her. *Id.* r. 51:3.13 cmt. 1.

Third, rule 51:3.13(C) describes circumstances under which a judge may accept a gift or thing of value from an individual who is *not* a restricted donor. It provides that a judge may accept gifts and things of value "from friends, relatives, or other persons, including lawyers, whose appearance or interest in a proceeding pending or impending before the judge would in any event require disqualification of the judge under rule 51:2.11." *Id.* r. 51:3.13(C)(1). Under this rule, a judge may generally accept gifts or things of value from lawyers or other individuals whose

appearance before the judge would require disqualification or disclosure under rule 51:2.11 with the important caveat that acceptance may not otherwise be prohibited under rule 51:3.13(A). *Id.* r. 51:3.13(C).

"Whenever a judge accepts a gift or other thing of value without paying fair market value, there is a risk that the benefit might be viewed as intended to influence the judge's decision in a case." *Id.* r. 51:3.13 cmt. 1. Nevertheless, the Iowa Code of Judicial Conduct recognizes that acceptance of a gift is unlikely to appear to a reasonable person to undermine judicial independence, integrity, or impartiality when the circumstances quite clearly indicate the person giving the gift did not give it based on the recipient's status as a judge. Rule 51:3.13 generally does not prohibit judges accepting special pricing, discounts, and other benefits made available to the public or certain classes of persons by businesses or financial institutions:

> Businesses and financial institutions frequently make available special pricing, discounts, and other benefits, either in connection with a temporary promotion or for preferred customers, based upon longevity of the relationship, volume of business transacted, and other factors. A judge may freely accept such benefits if they are available to the general public, or if the judge qualifies for the special price or discount according to the same criteria as are applied to persons who are not judges. As an example, loans provided at generally prevailing interest rates are not gifts, but a judge could not accept a loan from a financial institution at below-market interest rates unless the same rate was being made available to the general public for a certain period of time or only to borrowers with specified qualifications that the judge also possesses.

*Id.* r. 51:3.13 cmt. 3. Accordingly, rule 51:3.13(B) permits a judge to accept "commercial or financial opportunities and benefits, including special pricing and discounts" offered by restricted donors so long as "the same opportunities and benefits . . . are made available on the same

terms to similarly situated persons who are not judges." *Id.* r. 51:3.13(B)(2).

Because legal services constitute a thing of value, rule 51:3.13(A) forbids a judge from accepting free legal services if doing so would appear to a reasonable person to undermine his or her independence, integrity, or impartiality. Attorneys with matters presently before a judge fall within the definition of "restricted donor" precisely because a judge accepting a thing of value from such an attorney would appear to a reasonable person to undermine the judge's independence, integrity, or impartiality.

However, an attorney or firm who is currently providing legal services to a judge is an attorney or firm whose appearance before the judge would trigger the disqualification or disclosure requirement of rule 51:2.11. Therefore, under rule 51:3.13(C), a judge may accept free legal services from an attorney or firm currently representing him or her because it would trigger the disqualification or disclosure requirement of rule 51:2.11 if that attorney or firm were to appear before the judge. Ordinarily, a reasonable person would not perceive a judge's acceptance of free legal services to undermine the judge's independence, integrity, or impartiality if the judge is required to disclose the relevant facts and obtain a waiver of disqualification from the parties under rule 51:2.11(C) before deciding a matter.

In contrast, when a judge accepts free legal services from an attorney or firm and then permits the attorney or firm to appear before him or her in court without disclosing the relevant facts and obtaining a waiver as required by rule 51:2.11(C), the judge's conduct might appear to a reasonable person to undermine his or her independence, integrity, or impartiality. The language of 51:3.13(C) explicitly acknowledges a

judge deciding a matter in which a party is represented by a lawyer from whom the judge accepted free legal services is sufficient to trigger the disqualification or disclosure requirement of rule 51:2.11 so long as the matter was impending when the services were accepted.[11] Its clear implication is that a reasonable person might believe a judge's independence, integrity, or impartiality has been compromised if the judge fails to disclose his or her recent acceptance of free legal services from an attorney or firm before deciding a matter in which the attorney or firm appears.

Because rule 51:3.13(A) requires judges to avoid accepting gifts or things of value under circumstances that might erode or diminish confidence in the judicial system, it would be ill-served to the task for which it was intended if we were to construe it in an overly mechanical fashion. Accordingly, we conclude any judge who accepts free legal services from an attorney or firm has a continuing obligation under 51:3.13(A) and canon 3 to ensure his or her acceptance of those services would not appear to a reasonable person to undermine his or her independence, integrity, or impartiality by honoring the disclosure and waiver requirements of rule 51:2.11(C) before deciding a matter in which the attorney or firm appears.

Because rule 51:3.13 does not forbid judges accepting free legal services under all circumstances, occasionally an attorney from whom a judge accepted free legal services will be scheduled to appear before the judge in court. Once a judge has accepted free legal services from an attorney or firm, the judge must either disqualify himself or herself from

---

[11]The Iowa Code of Judicial Conduct defines "impending matter" as "a matter that is imminent or expected to occur in the near future." Iowa Code of Judicial Conduct, Terminology.

any matter in which the attorney or firm who provided the services appears or disclose his or her acceptance of free legal services and obtain a waiver of the disqualification requirement from the parties. *See id.* r. 51:2.11(A), (C). A judge violates rule 51:3.13(A) and canon 3 of the Iowa Code of Judicial Conduct by failing to ensure his or her acceptance of free legal services does not reasonably appear to undermine his or her independence, integrity, or impartiality.

2. *Application of legal principles.* Though Judge Howes offered to pay Mr. Jasper and Ms. Pauly for their legal services, the record indicates she accepted free legal services from both attorneys when they refused her offers for payment. The Commission concluded Judge Howes violated rule 51:3.13(A) because it found her acceptance of free legal services from Mr. Jasper and Ms. Pauly would appear to a reasonable person to undermine her independence, integrity, or impartiality.[12]

Judge Howes had an attorney–client relationship with each of the attorneys from whom she accepted free legal services at the time she accepted the services. Furthermore, the record contains no evidence suggesting the attorneys from whom Judge Howes accepted free legal services were restricted donors. Accordingly, we conclude Judge Howes did not violate rule 51:3.13 merely by accepting free legal services. *See id.* r. 51:3.13(C)(1).

However, the record also reveals Judge Howes failed to honor her continuing obligation to ensure her acceptance of free legal services from Ms. Pauly would not reasonably appear to undermine her independence,

---

[12]Ms. Pauly filed the petition for dissolution of the marriage between Mr. Khawaja and Ms. Jadoon in the district court on November 9, 2012. However, the Commission did not charge Judge Howes with violating 51:3.13(B) or find that Ms. Pauly was a restricted donor.

integrity, or impartiality by failing to disqualify herself from a matter in which Ms. Pauly appeared or disclose her acceptance of free legal services from Ms. Pauly to the parties and obtain a waiver of the disqualification requirement.[13] Because Judge Howes failed to disqualify herself or disclose her acceptance of free legal services from an attorney who appeared before her, we agree with the Commission that she violated rule 51:3.13(A) and canon 3 of the Iowa Code of Judicial Conduct.[14]

**C. Rules 51:1.1 and 51:1.2 and Canon 1.** We now consider whether Judge Howes violated rules 51:1.1 and 51:1.2 as well as canon 1 of the Iowa Code of Judicial Conduct by failing to comply with the rules set forth therein, failing to avoid the appearance of impropriety, and failing to promote public confidence in the independence, integrity, and impartiality of the judiciary.

1. *Governing legal principles.* Canon 1 of the Iowa Code of Judicial Conduct provides that "a judge shall uphold and promote the independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety." Rule 51:1.1 provides that judges "shall comply with the law, including the Iowa Code of Judicial Conduct." *Id.* r. 51:1.1. Rule 51:1.2 provides that a judge must "act at all times in a manner that promotes public confidence in the

---

[13]We note the record does not indicate whether Judge Howes honored these requirements when Mr. Jasper appeared before her after she accepted free legal services from him.

[14]Because we conclude rule 51:3.13(A) imposes a continuing obligation on a judge who accepts free legal services from an attorney to ensure his or her acceptance of those services would not reasonably appear to undermine his or her independence, integrity, or impartiality by honoring the disqualification or disclosure requirement of rule 51:2.11 before deciding a matter in which the attorney appears, we need not decide whether the matter Judge Howes decided constituted an "impending matter." *See* Iowa Code of Judicial Conduct, Terminology; *id.* r. 51:3.13(C)(1).

independence, integrity, and impartiality of the judiciary and shall avoid impropriety and the appearance of impropriety." *Id.* r. 51:1.2. For purposes of applying this rule, the term "impropriety" means "conduct that violates the law, court rules, or provisions of the Iowa Code of Judicial Conduct, and conduct that undermines a judge's independence, integrity, or impartiality." *Id.*, Terminology. The term "integrity" means "probity, fairness, honesty, uprightness, and soundness of character." *Id.*

As the preamble to the Iowa Code of Judicial Conduct provides, judges "should aspire at all times to conduct that ensures the greatest possible public confidence in their independence, impartiality, integrity, and competence." *Id.*, Preamble [2]. Accordingly, rule 51:1.2 governs a judge's conduct both on and off the bench. *In re Meldrum*, 834 N.W.2d 650, 653 (Iowa 2013); *Block*, 816 N.W.2d at 364; *see* Iowa Code of Judicial Conduct R. 51:1.2 cmt. 1.

The comments to rule 51:1.2 describe various means by which a judge might fail to promote public confidence in the judiciary or fail to avoid the appearance of impropriety. In particular, conduct undermines, rather than promotes, public confidence in the judiciary when it appears to compromise the independence, integrity, and impartiality of a judge. Iowa Code of Judicial Conduct R. 51:1.2 cmt. 3. Conduct creates an appearance of impropriety when it violates the Iowa Code of Judicial Conduct or creates in reasonable minds the perception that a judge engaged in conduct reflecting adversely on his or her impartiality or fitness as a judge. *Id.* r. 51:1.2 cmt. 5.

2. *Application of legal principles.* Judge Howes decided a matter from which she failed to disqualify herself when the rule of necessity did not apply without disclosing all the relevant facts and obtaining a waiver

of the disqualification requirement from the parties. She also failed to ensure her acceptance of free legal services did not reasonably appear to undermine her independence, integrity, or impartiality by deciding a matter in which an attorney from whom she accepted free legal services represented a party without disclosing her acceptance of free legal services from the attorney and obtaining a waiver of the disqualification requirement from the parties. By this conduct, Judge Howes failed to comply with the Iowa Code of Judicial Conduct, failed to avoid the appearance of impropriety, and failed to promote public confidence in the independence, integrity, and impartiality of the judiciary. Therefore, we agree with the Commission that Judge Howes violated rules 51:1.1 and 51:2.1 as well as canon 1.

**D.  Rules 51:1.1, 51:1.2, and 51:2.16(A) as well as Canons 1 and 2.**  Finally, we consider whether Judge Howes violated rules 51:1.1, 51:1.2, and 51:2.16(A) as well as canons 1 and 2 of the Iowa Code of Judicial Conduct by failing to be honest and candid with the Commission. Rule 51:2.16(A) provides that judges "shall cooperate and be candid and honest with judicial and lawyer disciplinary agencies."

The Commission charged Judge Howes with failing to be honest and candid with it based on statements appearing in her letter explaining her conduct. Judge Howes sent the letter in response to the Commission's request that she provide a written explanation of her conduct addressing the circumstances under which she signed the ex parte order and whether Ms. Pauly represented her at that time. In it, Judge Howes stated she had not contacted or hired Ms. Pauly upon receiving the letter from Mr. Henderkott in which he requested she reimburse him the money deducted from his tax return.

This statement conflicted with a statement appearing in the response Judge Howes sent to Mr. Henderkott upon receiving his letter. Specifically, in the response to Mr. Henderkott, Judge Howes indicated she had discussed the tax issue with her attorney, whom she identified as Ms. Pauly.

During the hearing before the Commission, Judge Howes testified she never intended to mislead the Commission about her communications with Ms. Pauly. Judge Howes also acknowledged the statement in her response to Mr. Henderkott indicating she had spoken to Ms. Pauly was untruthful. Judge Howes did not remember precisely why she wrote the untruthful statement to Mr. Henderkott, but she indicated it might have been because she intended to tell Ms. Pauly about Mr. Henderkott's letter at the time or because she wished to assume a particular posture in her communications with him.

Although the Commission expressed concern that Judge Howes did not thoroughly review her records before responding to its request for a written explanation of her conduct, it concluded Judge Howes did not intentionally deceive it. Therefore, the Commission concluded there was not a convincing preponderance of the evidence indicating Judge Howes failed to cooperate with its investigation or deceived it in violation of any particular rule or canon.

After careful review of the record, we also conclude the evidence was inadequate to prove Judge Howes was intentionally dishonest with the Commission. What Judge Howes wrote to the Commission was inconsistent with what she wrote to Mr. Henderkott. However, in both her written explanation of her conduct and her testimony before the Commission, Judge Howes acknowledged that Ms. Pauly wrote the May 22 letter on her behalf. In addition, Judge Howes consistently

indicated to the Commission that she communicated about the tax dispute with Ms. Pauly only after Ms. Pauly received the letter from Mr. Kepros, and Ms. Pauly corroborated this account of the timeline in her testimony.

Although a convincing preponderance of the evidence indicates Judge Howes made an inaccurate statement, the record indicates it was probably the statement in her letter to Mr. Henderkott, not the statement in her written explanation of her conduct to the Commission. However carefully worded the letter Judge Howes wrote to the Commission might have been, the evidence was inadequate to prove she violated any rule or canon in the manner charged by a convincing preponderance of the evidence. Accordingly, we agree with the Commission the evidence does not prove Judge Howes violated rules 51:1.1, 51:1.2, and 51:2.16(A) as well as canons 1 and 2 of the Iowa Code of Judicial Conduct in the manner charged.

## IV. Sanction.

We impose sanctions in judicial discipline proceedings "not to punish the individual judge, but to restore and maintain the dignity, honor, and impartiality of the judicial office." *In re McCormick*, 639 N.W.2d 12, 16 (Iowa 2002). We also impose sanctions to protect the public by deterring judges from engaging in unethical conduct in the future. *Block*, 816 N.W.2d at 365.

There are no standard sanctions in judicial discipline cases based on the rule or rules violated. *Meldrum*, 834 N.W.2d at 654. Ultimately, we determine the suitable sanction by considering the goals served by judicial discipline and the entire record before us. *In re Dean*, 855 N.W.2d 186, 192 (Iowa 2014). We tailor the sanction to the particular case by considering all the aggravating or mitigating factors that may

bear upon the appropriate sanction for the offending conduct. *Krull*, 860 N.W.2d at 46.

We begin our analysis concerning the appropriate sanction in a judicial discipline case by considering the following factors:

1. whether the misconduct is isolated or a pattern of misconduct;

2. the nature, extent, and frequency of the acts of misconduct;

3. whether the misconduct occurred in or out of the courtroom;

4. whether the misconduct occurred in the judge's official capacity or in his or her private life;

5. whether the judge has acknowledged or recognized the misconduct;

6. whether the judge has made an effort to change or modify his or her conduct;

7. the length of service on the bench;

8. whether there have been any prior complaints;

9. the effect of the misconduct upon the integrity of and respect for the judiciary; and

10. the extent to which the judge exploited the judicial office to satisfy personal interests.

*Krull*, 860 N.W.2d at 46 (quoting *Block*, 816 N.W.2d at 365–66). We may also consider any additional factors we find relevant to calibrating the sanction to the particular misconduct, including the sanctions imposed in cases involving similar misconduct and the subjective motivations of the judge who engaged in misconduct. *See id.* at 46–47; *McCormick*, 639 N.W.2d at 16–18.

The Commission recommended Judge Howes be publicly reprimanded, rather than temporarily suspended, in light of a

consideration it found to mitigate the severity of her misconduct. In particular, the Commission concluded the legal culture in which Judge Howes works likely contributed to her apparent confusion regarding the applicable standards for identifying conflicts that warrant judicial recusal and the appropriateness of judges accepting free legal services from attorneys likely to appear before them. We give respectful consideration to the Commission's recommendation regarding an appropriate sanction, but we are not bound by it. *Krull*, 860 N.W.2d at 43.

On the one hand, several factors we ordinarily weigh in considering the appropriate sanction for judicial misconduct counsel in favor of a serious sanction here. Though Judge Howes's misconduct took place during an isolated episode, it was particularly likely to erode the confidence of litigants appearing before her. Furthermore, though Judge Howes never engaged in misconduct in a public courtroom, she committed misconduct in her chambers while acting in her official capacity. Additionally, misconduct of the sort at issue in this case is understandably likely to undermine public respect for and public confidence in the integrity of the judiciary.

On the other hand, several additional factors we traditionally find relevant to determining an appropriate sanction in a judicial discipline case counsel in favor of a lighter sanction. The conduct by which Judge Howes violated her ethical duties involved an isolated decision. In view of the charges against her, Judge Howes appears to have at least resolved to be more cautious about ensuring her conduct complies with her ethical duties in the future. Judge Howes has served the state as a member of the judiciary for approximately twenty-three years, and she has never been disciplined before. Nor does the evidence suggest Judge Howes exploited her judicial role to her personal benefit. On the

contrary, judges and attorneys who appeared before the Commission on her behalf indicated she has an excellent reputation as a judge.

We agree with the Commission that additional circumstances are relevant to selecting the appropriate sanction in this case. Based on the testimony of the other judges who appeared before the Commission on her behalf, it is evident Judge Howes was not alone in her mistaken beliefs concerning her ethical obligations. But we are mindful that judges are responsible for assuring that they understand the parameters of their ethical duties. Because avoiding even the appearance of impropriety is of paramount importance to maintaining the public trust and respect for the judiciary, judges should conduct themselves especially cautiously whenever those parameters appear to be unclear or debatable. Accordingly, we conclude the apparent lack of clarity concerning the rules violated counsels only slightly in favor of a lighter sanction.

In addition, Judge Howes has reassured us that she did not intentionally or knowingly disregard her ethical obligations. Rather, it is clear that, were it not for her mistaken beliefs concerning the rules governing her conduct, she would have conducted herself differently to avoid violating them. Judge Howes acted in good faith and took care to assure she honored what she understood those requirements to be. Moreover, we are firmly convinced Judge Howes did not intend to give Ms. Pauly or her client any advantage by granting the application for a temporary injunction. Rather, the order she signed was merely a temporary order maintaining the status quo pending a further hearing, and she believed that an emergency warranting immediate action existed. We conclude these facts also counsel in favor of a lighter sanction.

Under the circumstances of this case, we believe a formal reprimand is unnecessary to maintain the dignity, honor, and impartiality of the judiciary. *See McCormick*, 639 N.W.2d at 16. Judge Howes clearly violated the Iowa Code of Judicial Conduct, but she would have conducted herself differently had she understood her ethical obligations. *See In re Frerichs*, 238 N.W.2d 764, 770 (Iowa 1976). Shared confusion concerning the parameters of those obligations directly and understandably contributed to her conduct.

In appropriate cases, a public admonition may be adequate to repair an appearance of impropriety in service to the public interest. *See Comm. on Prof'l Ethics & Conduct v. Liles*, 430 N.W.2d 111, 112–13 (Iowa 1988) ("The public's interest in guarding against even an appearance of impropriety can be adequately served here by an admonition."). A public admonishment may also perform the important function of avoiding the appearance of impropriety in the future by instructing members of the bench as to how to avoid violating their ethical obligations when similar circumstances arise. *See id.* at 113. Accordingly, we conclude a public admonishment will serve the fundamental purposes of judicial discipline in this case. *Block*, 816 N.W.2d at 365; *McCormick*, 639 N.W.2d at 16.

We are mindful of statutory and constitutional limits on our power to sanction a judicial officer. Section 602.2106(3)(*b*) of the Iowa Code permits this court to discipline or remove a judicial officer when the Commission files an application for judicial discipline. Iowa Code § 602.2106(3)(*b*). In the context of attorney disciplinary proceedings, however, we have previously recognized that public admonitions constitute something "considerably less severe than reprimands, and . . . something less than actual discipline." *Liles*, 430 N.W.2d at 113.

Notwithstanding this distinction, we conclude this court has the power to admonish, rather than reprimand, suspend, or remove, a judge when the Commission files an application for judicial discipline for the following reasons. First, section 602.2106(4) states that this court may "render the decree that it deems appropriate" when it finds an application for judicial discipline "should be granted in whole or in part." Iowa Code § 602.2106(4). Second, the Iowa Constitution grants this court "supervisory and administrative control over all inferior judicial tribunals throughout the state." Iowa Const. art. V, § 4. Thus, we conclude that when the Commission makes an application for discipline of a judicial officer to this court, upon deciding to grant the application this court has the power to admonish rather than reprimand, suspend, or remove a judicial officer.

## V. Conclusion and Sanction.

We conclude Judge Howes violated rules 51:1.1, 51:1.2, 51:2.11(A), and 51:3.13(A) as well as canons 1, 2, and 3 of the Iowa Code of Judicial Conduct. We therefore grant the Commission's application for judicial discipline and publicly admonish Judge Howes for her conduct.

**APPLICATION GRANTED AND JUDGE PUBLICLY ADMONISHED.**